**Lancess WOMACK, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (The SCHOOL DISTRICT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 18, 2013.

Decided Jan. 14, 2014.

Mark R. Schmidt, Media, for petitioner.

William E. Malone, Jr., Media, for respondent, The School District of Philadelphia.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Lancess Womack (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed a workers' compensation judge's (WCJ) decision denying the utilization review (UR) petition of one of Claimant's medical providers, Dr. Terri Gartenberg, D.C. (Provider).[1] We affirm the Board's order.

## BACKGROUND

In May 2007, a WCJ issued a decision and amended decision, finding that Claimant sustained the following injuries during her employment with the Philadelphia School District (Employer): herniated discs of the lumbar spine, aggravated by Claimant's work injuries, which consists of a right medial meniscal tear, right shoulder pain, and chronic lumbar pain with anxiety and depression. On September 21, 2010, Employer filed a request for utilization review (UR) of Provider's treatment of Claimant for the period beginning

---

1. Dr. Gartenberg practices in a group known as Philadelphia Pain Management.

August 19, 2010 and ongoing.[2] On November 15, 2010, the assigned utilization review organization (URO), Rehabilitation Planning, Inc., through its reviewer Michael Zdilla, D.C. (Reviewer), issued a UR Determination, concluding that Provider's medical treatment was unreasonable and unnecessary. On November 29, 2010, Provider filed a UR Petition, seeking review of the UR Determination. The WCJ determined that Provider's treatments were neither reasonable nor necessary. Claimant appealed that decision to the Board, which affirmed the WCJ.

## DISCUSSION

On appeal,[3] Claimant first contends that the Reviewer's UR Determination was not issued within the time period required in Section 306(f.1)(6)(ii) of the Workers' Compensation Act (Act).[4] As a result, Claimant contends that the UR Determination is void and the treatment should be covered. In the event we rule against her on that issue, Claimant raises the following additional issues: (1) whether the WCJ erroneously shifted the burden to Provider to establish the reasonableness and necessity of her treatment of Claimant; (2) whether the WCJ applied erroneous standards in considering whether the treatment at issue was reasonable and necessary; and (3) whether the WCJ issued a reasoned decision as required by the Act.[5]

### A. Time and Consequences

■ Section 306(f.1)(6)(ii) of the Act provides, in pertinent part:

Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider ... may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act....

(ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

(iii) The employer or the insurer shall pay the cost of the utilization review.

For purposes of calculating the 30–day review period in the Act, a request for utilization review is considered complete upon the URO's receipt of pertinent medical records or 35 days from the assignment of the matter by the Bureau of Workers' Compensation, Pennsylvania Department of Labor and Industry (Bureau), to the

2. Shortly before Employer filed the present UR request, the same WCJ had adjudicated three earlier UR petitions filed by three other medical care providers who also are associated with Philadelphia Pain Management. In those earlier proceedings, the WCJ determined that the chiropractic services provided by two of the three providers were not reasonable and necessary. (*See* Reproduced Record (R.R.) at 1–19.)

3. This Court's review of an order of the Board affirming a WCJ's decision denying a petition to review a UR determination is limited to considering whether necessary factual findings are supported by substantial evidence, and whether an error of law or violation or constitutional rights occurred. 2 Pa.C.S. § 704.

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6)(ii).

5. We have re-stated the issues as presented in Claimant's statement of issues involved in order to track more closely the substance of Claimant's arguments.

URO, whichever is earlier. 34 Pa.Code § 127.465(a). "A URO shall complete its review, and render its determination, within 30 days of a completed request for UR." *Id.* § 127.465(b). Thus, *at latest*, a URO has 65 days from the date of assignment to issue a written report. If, however, the URO receives medical records before the 35th day following assignment, the due date for the written determination would be earlier.

Here, the Bureau's Notice of Assignment to the URO provides an assignment date of September 21, 2010. In his UR Determination, Reviewer indicates that the only records that he reviewed were those of the Provider. (Reproduced Record (R.R.) at 33.) According to Item "E" in Claimant's Exhibit C–4 in the proceeding before the WCJ, the URO received those records on October 5, 2010. (R.R. at 29–30.) Under the Act and regulations, then, the request for UR was deemed complete on October 5, 2010. To comply with the Act and regulations, then, the URO had 30 days from October 5, 2010 to issue its written determination, or until November 4, 2010. Here, Reviewer issued his UR Determination on November 15, 2013. Thus, Reviewer did not issue his UR De-

termination within the time frame provided in the Act, as implemented by the regulations.[6]

Claimant contends that because the URO was late in issuing its written determination, the UR determination is invalid and the treatment at issue should be deemed reasonable and necessary. (Claimant Br. at 13). The Board rejected this proposed consequence, relying on an analysis of this Court's case law relating to real estate tax sales and whether a time period set forth in a law is mandatory or directory. In *In re Sale of Real Estate by Lackawanna County Tax Claim Bureau*, 22 A.3d 308 (Pa.Cmwlth.), *appeal denied*, 613 Pa. 648, 32 A.3d 1279 (2011) (*Lackawanna County*), the issue before this Court was whether a provision of a tax sale law, which, as paraphrased by this Court, provided that the county tax sale "[b]ureau 'shall' file a petition for judicial sale within one year of an unsuccessful upset tax sale," *id.* at 314, imposed a mandatory or directory time requirement. Our Supreme Court has held that the failure to follow a mandatory provision will render a proceeding void, but the failure to follow a directory provision will render such proceedings voidable under only cer-

---

**6.** We note that in the top right corner of the Bureau's Notice of Assignment to the URO, the Bureau includes a "Determination Due Date" of November 29, 2010. It is unclear to the Court based on the record in this matter, the argument of the parties in their briefs, and the relevant provision of the Act and regulations how the Bureau calculated this date. Nonetheless, the body of the notice includes the following notice to the URO, which accurately tracks the language of the Act and regulations in terms of how the URO should calculate the due date for its written report:

> **NOTICE TO THE URO:** You have five (5) days from the receipt of this Notice to make a written request for records from the provider under review and all other treating providers listed on the utilization review

request. You must complete your review and render your report within thirty (30) days of the date you receive the records or within sixty-five (65) days of the date of this Notice, whichever is earlier. If you have not received the records within thirty (30) days, you may proceed with your review. (R.R. 24.) Given the manner by which the time frame to issue a written determination is dependent, at least in part, on when (or if) the URO receives the medical records, the Bureau cannot provide a URO with a firm report due date when it assigns a matter. In light of this, we urge the Bureau to revisit its form notice of assignment in this regard and further urge UROs to calculate independently the dates by which it must issue written determinations so as to comply with the Act and regulations.

tain circumstances. *Fishkin v. Hi–Acres, Inc.*, 462 Pa. 309, 317 & n. 5, 341 A.2d 95, 99 & n. 5 (1975).

Upon review of the relevant case law, however, we conclude that the mandatory/directory distinction in our case law does not control the outcome of this matter, because Employer here did not fail to follow any prescribed statutory time period in either the Act or the regulations. Yet, Claimant asks that we essentially prejudice Employer's rights under the Act to seek review of medical treatment for medical necessity and reasonableness because an entity beyond Employer's control, the URO, failed to meet its statutory and regulatory deadlines to issue a written determination. We see no basis in the Act or the regulations, even in light of the Act's remedial nature and affording it liberal construction in favor of the injured worker, to hold Employer, or even a claimant or a provider if they happen to request utilization review under the Act, so accountable.

In *Fishkin*, minority shareholders of a corporation challenged the corporation's sale of its sole asset on the ground that the corporation did not follow the proper statutory procedures to effect the sale. The Pennsylvania Supreme Court held, however, that those procedures, which involved notice to shareholders and a shareholder vote, were directory and not mandatory. It reasoned:

> There is ... no public interest of substance which is jeopardized by a transfer not in compliance with the statute, and this fact militates against the conclusion that in enacting s 311, subd. B [of the Business Corporation Law] the legislature intended that a transfer which is defective solely because it is violative of the requirements of this provision would be a nullity and of no effect. Properly construed, the word 'shall' in s 311, subd. B is directory only, for it is suffi-

cient to protect the rights of minority shareholders that a non-conforming transfer be deemed voidable (under proper circumstances) by an aggrieved stockholder, rather than void Ab initio. We know of no decision in any other jurisdiction which has held to the contrary in construing similar statutory requirements. Thus, although rescission may in some instances be an appropriate remedy, it is not, as the court below recognized, when the rights of third parties have intervened and the transaction has been completed. There are few reported cases from other jurisdictions in which the remedy of rescission has been awarded. In each, such relief was granted only where the transfer had not yet been completed, or upon a showing that the vendee had no equitable rights superior to those of the aggrieved shareholder.

*Fishkin*, 462 Pa. at 316–17, 341 A.2d at 98–99 (citations omitted) (footnote omitted). The Supreme Court further explained the mandatory/directory distinction:

> To hold that a statutorily prescribed procedure is directory does not mean that it is optional; to be adhered to or not at will. The distinction between a mandatory and a directory statute lies in the effect of noncompliance upon the transaction involved—not in the liability of the person who has violated the statute. Failure to conform to a mandatory procedure renders the regulated activity a nullity. Strict compliance with a directory provision, on the other hand, is not essential to the validity of the transaction or proceeding involved.

*Id.* at 317 n. 5, 341 A.2d at 98 n. 5 (citation omitted). Thus, in *Fishkin* the question was whether the *corporate defendant's failure* to adhere to statutory procedures rendered the sale *by the corporation* to an innocent third-party purchaser void *ab ini-*

*tio,* or from its inception. In concluding that those procedures were directory, the Supreme Court held that the violation did not render the transaction void *ab initio.*

Similarly, in *Lackawanna County,* this Court examined the question of whether a judicial sale of real estate *by the county* to an innocent purchaser should be set aside due to *the county's* failure to petition for judicial sale within the statutorily-prescribed time period following an unsuccessful tax upset sale.[7] Like the regulatory provision at issue in this case, the judicial sale provision at issue in *Lackawanna County* included the word "shall" with respect to the period within which the county is to seek a judicial sale. To determine whether the sale must be set aside, taking our lead from the Supreme Court's decision in *Fishkin,* we analyzed whether use of the word "shall" compelled the conclusion that the failure of the county to commence judicial sale proceedings within the statutory period rendered the judicial sale void *ab initio—i.e.,* the time period was mandatory and not directory.

We observed that courts have generally found directory statutory provisions that provide for a particular time period for performance by a public officer or public entity, unless the time period is one that is essential to the statutory purpose or where the statute itself indicates that performance within the time period is mandatory. *Lackawanna County,* 22 A.3d at 314. In concluding that the judicial sale time limitation provision was directory, not mandatory, we noted that the statute at issue included no provision barring a later-than-one year tax sale, nor did we find any case

law suggesting that such a sale would be barred. We were also persuaded by the fact that the statute did not provide any specific consequence for the failure to comply with the time period. Thereafter, we considered whether the intent and/or purpose of the statute suggested that the General Assembly intended for the time period to be mandatory. Although we recognized that one of the purposes of the statute was to ensure the collection of taxes rather than to deprive citizens of their property, we identified a distinction between those *notice* provisions which courts must strictly construe and the "timing" provision at issue before the Court. We commented that the provision at issue "pertains to the timing for filing a petition for judicial tax sale so that the collection of taxes may be effectuated, and it does not in any way implicate provisions regarding notice to be afforded a property owner." *Id.* at 315. Thus, we concluded that interpreting "the provisions . . . as directory, [rather] than mandatory, therefore, would not run afoul of the intention or purpose of the" statute. *Id.*

In its decision, the Board referenced, but did not discuss, our Supreme Court's decision in *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures),* 585 Pa. 366, 888 A.2d 758 (2005). In *Gardner,* the Supreme Court considered a timing provision in the Act that requires claimants who have received total disability compensation for a period of 104 weeks, upon the employer's request, to submit to an impairment rating evaluation (IRE) to determine the degree to which

---

7. Section 616 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.616, provides in pertinent part:

> If within the period of ten (10) months after the date of the scheduled upset sale, the bureau has not filed a petition for a judicial sale under section 610 or the property has not been sold at private sale, the bureau shall, within the next immediately following two (2) months, file a petition for judicial sale of the property in the manner set forth in section 610.

the claimant remains impaired. Section 306(a.2)(1) of the Act.[8] Under that provision, if the medical examination reveals an impairment rating resulting from the work-related injury to be equal to or greater than fifty-percent impairment, the claimant is presumed to be totally disabled and may continue to receive total disability benefits. If the impairment rating is below fifty percent, the claimant's benefits, after notice, will be reduced automatically to partial disability. Specifically, Section 306(a.2)(1) of the Act provides that, after receiving total disability for 104 weeks, "the employee shall be required to submit to a medical examination which *shall be requested* by the insurer *within sixty days* upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any." (Emphasis added.)

The issue before the Supreme Court in *Gardner* was whether the sixty-day time limitation for requesting a claimant to submit to an IRE following the end of the initial 104–week period of total disability was mandatory or directory. The insurer argued that the use of the word "shall" was ambiguous in light of other IRE provisions that identified no time limitation period (Section 306(a.2)(6) of the Act)[9] and that the General Assembly signaled an intent not to impose a mandatory time limitation based on the fact that the Act contains no sanctions for failing to request a claimant to submit to an IRE within sixty days of the expiration of the 104–week total disability period. The insurer also argued that "shall" should be interpreted as mandatory only in instances where the time and manner of performance are essential to the purpose of the provision.

The Supreme Court acknowledged an ambiguity in the use of the word "shall" and pursued interpreting the provision in accordance with the Statutory Construction Act.[10] The General Assembly, the Supreme Court observed, elected to use the word "shall" three times in Section 306(a.2) of the Act, and thereby imposed obligations on three distinct parties involved in the IRE process: (1) claimants (to submit to an IRE); (2) insurers (to request claimants to submit); and (3) physician-examiners (to determine the degree of impairment upon examination). *Gardner*, 585 Pa. at 378, 888 A.2d at 765. The Supreme Court held that "[t]he obligations so imposed cannot be viewed in any other way but mandatory, as the success of the IRE process as a cost-containment measure depends on such. To construe the obligations imposed by Section [306(a.2) of the Act] as merely directory, as opposed to mandatory, threatens to render the obligations, and, by extension, the process, meaningless." *Id.*

By way of fuller explanation, the Supreme Court commented that

if we were to hold that the timeline for the insurer to request an employee [to] submit to an IRE for the purpose of obtaining the relief afforded by Section 511.2(2) was merely directory, it is not unforeseeable that a claimant who has been requested to submit to an IRE might be justified in declining to attend on the grounds that his or her obligation was but a mere suggestion. That scenario is not improbable either, as the results of an IRE could affect how long

---

**8.** Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(1).

**9.** Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(6).

**10.** 1 Pa.C.S. §§ 1501–1991.

a claimant may receive benefits. The result of such a construction is absurd and would frustrate the cost-containment objectives of Section 511.2. Therefore, we cannot accept that one party's obligation is merely directory or permissive when the very same statute imposes corresponding obligations on others.

*Id.* at 378–79, 888 A.2d at 765. Recognizing the other IRE provisions of the Act, the Supreme Court held that the sixty-day limitation period was pertinent only to the automatic relief that insurers receive from employing it. Even if, however, an insurer fails to avail itself of that section, an insurer may still request a later IRE, but the results, unlike the relief afforded under Section 306(a.2)(1) of the Act, are "not … self-executing, but rather, applicable to a traditional administrative process," *i.e.*, an adjudication or agreement between the parties. *Id.* at 382, 888 A.2d at 768.[11]

Common threads in each of these cases was a failure by a particular party to the proceeding to comply with a statutory or regulatory requirement and the question of whether that party should bear some responsibility, or consequence, for its own failure to comply. In *Fishkin*, it was the corporation selling its sole asset. In *Lackawanna County*, it was the county selling real estate at a judicial sale. And in *Gardner*, it was the insurer seeking an IRE from a claimant under the Act.

Here, by contrast, the entity that failed to comply with a statutory and regulatory requirement is *not* a party to this proceeding and is not even under the control or supervision of a party. Nonetheless, Claimant would have Employer bear the consequence—*i.e.*, payment of a potentially unnecessary and unreasonable treatment—for that nonparty's failure to satisfy its duties under the Act and regulations. We see nothing in our case law that supports this result.

Instead, under these circumstances, we find it appropriate to follow the path taken by the Court in *West Penn Power Company v. Pennsylvania Public Utility Commission*, 104 Pa.Cmwlth. 21, 521 A.2d 75 (1987). In that case, private parties filed a complaint with the Public Utility Commission (PUC), challenging as contrary to a PUC regulation a practice of West Penn Power Company (West Penn) that required certain customers to deposit security with West Penn to secure electric service. An administrative law judge issued a

---

**11.** In her brief, Claimant urges us to examine closely our decision in *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734 (Pa.Cmwlth.2010). She contends that *Hall* supports her contention that the employer/insurer must pay for treatment where the URO fails to issue a determination within the statutorily-prescribed time frame. In *Hall*, this Court held that a workers' compensation judge did not err in dismissing a claimant's utilization review petition, because the provider failed to mail medical records within the period proscribed in 34 Pa.Code § 127.464(a), that being within 30 days of a request for such records. *Hall*, however, is inapposite, because in addition to providing the 30–day time period, Section 127.464(a) expressly authorizes the URO "to render a decision that the treatment under review is not reasonable or necessary" if a provider fails to provide requested medical records to the URO in a timely fashion. We did not engage in any mandatory versus directory analysis in *Hall*. But here, there is no provision in the regulations that requires, or even authorizes, the setting aside of an untimely-issued UR determination favorable to the requester. *Hall*, therefore, does not support Claimant's argument on appeal. For that same reason, we find misplaced Claimant's reliance on *County of Allegheny (John J. Kane Center) v. Workers' Compensation Appeal Board (Geisler)*, 875 A.2d 1222 (Pa. Cmwlth.2005) (affirming where URO deemed treatment unnecessary and unreasonable for failure of medical provider to comply with Section 127.464(a)).

decision favorable to the private parties, which the PUC affirmed. On appeal to this Court, West Penn argued that the ALJ's adjudication was null and void, because it was not issued within the time period required by the Public Utility Code, 66 Pa.C.S. § 332(g), which provides:

> In all on-the-record proceedings ..., hearings shall be commenced by the administrative law judge within 90 days after the proceeding is initiated, and he shall render a decision within 90 days after the record is closed, unless the commission for good cause by order allows an extension not to exceed an additional 90 days.

The parties agreed that the PUC did not grant an extension, nor was one sought, and that the ALJ's decision was not issued until eleven months after the record was closed. West Penn thus took the position, similar to the position that Claimant takes here, that the ALJ's decision favorable to the private party complainants was void *ab initio*.

This Court rejected West Penn's argument. In doing so, we discussed whether Section 332(g) was mandatory or directory and ultimately concluded it was the latter:

> We note initially that it was the *adjudicatory body*, not the litigants, which failed to comply with the time provisions. For this reason we find this case analogous to *Moore Nomination Petition*, 447 Pa. 526, 291 A.2d 531 (1972). The issue in *Moore* was whether the provision in Section 977 of the Pennsylvania Election Code,[12] 25 P.S. § 2937, requiring the Commonwealth Court to hold a hearing on a challenge to a nominating petition within certain time restrictions, was mandatory or directory.

There, as here, the time constraint was one imposed upon the adjudicatory body, not the litigants. The *Moore* court explained that, while the legislature may fix a time within which ministerial acts of procedure must be performed by the litigants, it cannot fix a time in which the exercise of the purely judicial function must occur and, thus, when a statute appears to do so it will be construed as directory. Here, admittedly, the adjudicatory body is an administrative agency and not a court. And, if we construe the statute as mandatory, the effect is to punish at least one of the litigants for the actions of the adjudicator. Certainly the legislature could not have intended such a result. The claim here is one of genuine interest to the public and we believe that the legislature desired that such matters be heard and resolved by the Commission, provided that *the parties* have properly complied with mandatory deadlines *applicable to them.* We thus hold that the time limits in Section 332(g) are directory only and, accordingly, when they are not complied with they do not operate to deprive the Commission of authority to enter an order.

*West Penn*, 521 A.2d at 78 (emphasis in original) (footnote omitted).

Applying this reasoning, Employer did not fail to meet a statutory or regulatory deadline in this case. Instead, it was the URO to whom the Bureau assigned this matter that failed to issue a timely decision. And while a URO's failure to comply with the Department's regulation may put the URO at risk of losing its authorization to conduct UR review,[13] we see no basis in

---

12. Act of June 3, 1937, P.L. 1333, *as amended.*

13. In *Chiro–Med Review Company v. Bureau of Workers' Compensation*, 908 A.2d 980 (Pa. Cmwlth.2006), we noted that in amending the

Act to add the UR process, the General Assembly authorized the Department to select UROs. The Department promulgated regulations fleshing out the process governing the

the Act, the regulations, or case law to impose the additional consequence of vacating the URO's decision as void *ab initio* simply because the URO failed to issue it within the proscribed time period.[14]

## B. Remaining Issues

### A. Did the WCJ Improperly Shift the Burden of Proof to Claimant?

■ The record before the WCJ included Reviewer's UR Determination, which reflected his consideration of (1) Provider's medical records, (2) MRIs of Claimant's lumbar spine and knee, (3) treatment notes, and (4) information Reviewer obtained in a conversation he had with Provider. Claimant submitted to the WCJ the earlier UR determinations rendered by the same WCJ, involving three other providers at Philadelphia Pain Management, Claimant's deposition testimony from those proceedings, and Claimant's "statement." Claimant also submitted a medical report issued by Provider on November 28, 2010.

The WCJ found Reviewer's UR Determination to be credible and persuasive, explaining that Reviewer acknowledged Claimant's identified work-related injuries and treatments, but that Reviewer also found fault with the failure of Provider's records to reflect issues such as progress, therapeutic goals, and "standardized outcome studies to support significant clinical or functional progress." (Finding of Fact (F.F.) no. 6.) The WCJ found Provider's November 28, 2010 letter to be unpersuasive and found an updated letter submitted by Provider lacking in "adequate detail in treatment plan, outcomes, types and fre-

quencies of exercises and modalities to substantiate ongoing care." (F.F. no. 7.) The WCJ determined that Provider set forth "no clinical or functional progress supported by standardized outcome studies." (*Id.*)

The WCJ further found Claimant's testimony and statement to be *unpersuasive*. The WCJ noted that Claimant receives chiropractic treatment from Provider twice per week, but that Claimant "feels relief only for the rest of the day and evening after she has her treatments." (F.F. no. 8.) The WCJ also determined that although Claimant testified that she experienced a reduction in pain following treatment, her use of a medically-prescribed Lidoderm "indicated that the relief Claimant feels is not only due to the treatment but to the patch and that her relief would be much less if she were not coupling her treatments with the pain medication." The WCJ also found Claimant's testimony unpersuasive because she indicated that "she is able to perform the exact treatment she receives at Philadelphia Pain Management from her own home" and that she "admitted she feels the same amount of relief at home when performing those treatments as she does in the doctor's office." (F.F. no. 8.) The WCJ concluded that Provider's treatment of Claimant was not reasonable or necessary as of August 19, 2010 and thereafter.

In her appeal to the Board, Claimant challenged certain factual findings as inconsistent or insufficient and argued that those findings had a negative impact upon the WCJ's credibility determinations and

---

authorization, reauthorization, duties, and obligations of UROs. 34 Pa.Code §§ 127.651–.670. Those regulations expressly provide for the revocation of an authorization if the URO fails to comply with the Act or the Department's regulations, including the regulation

requiring the URO to issue a timely decision. *Id.* § 127.669.

14. Claimant does not contend that the URO determination is void for any other reason, equitable or otherwise. *See Fishkin*, 462 Pa. at 317 & n. 5, 341 A.2d at 99 & n. 5.

conclusions. Claimant also contended that the WCJ erroneously shifted the burden to Provider to offer a justification in her records for treatment within the body of her records, and erred with regard to certain findings favorable to Employer's position based upon the lack of certain information in Provider's records relating to her treatment plans and outcomes. Claimant also contested the WCJ's findings regarding Claimant's testimony—*i.e.*, that it was not persuasive, because the same WCJ in the earlier UR determinations involving other chiropractors in Provider's practice determined the same deposition testimony to be credible. The Board affirmed the WCJ's decision.

Claimant is correct in asserting that Employer had the burden throughout the UR process to prove that Provider's treatments are not reasonable and necessary. *Topps Chewing Gum v. Workers' Comp. Appeal Bd. (Wickizer)*, 710 A.2d 1256, 1260–61 (Pa.Cmwlth.1998). Nevertheless, we disagree with Claimant's contention that the WCJ shifted the burden to Provider.

In rendering his report, Reviewer concluded that key *information* regarding Provider's treatment was not included in the records Provider submitted. Specifically, Reviewer noted that the records contained inadequate information relating to Provider's approach to treating Claimant:

A valid and appropriate system of measuring a patient's functional activity should be utilized to assess treatment effect and progress, and to assist decisions to continue, alter or stop treatment. This typically includes questionnaires of self perceived functional ability and activity tolerance that are valid, readily available, easily administered, in wide use by the provider group under review, and that have supporting literature that assists interpretation of mini-

mal clinically important change/improvement. The available documentation does not demonstrate that an ongoing systematic approach to assessing treatment effect and progress was utilized. There were no questionnaires or pain drawings to show significant change of the claimant's pain levels and difficulties with various activities over time.

Although the claimant's chronic injuries were well documented by diagnostics the reviewed documentation from [Provider] does not provide adequate detail in treatment plan, detailed types and frequencies of exercises and modalities to substantiate ongoing care.

(R.R. 41–42 (footnotes omitted).)

The Bureau's regulations make clear that a URO may conclude that treatment is not reasonable and necessary when a provider fails to submit records regarding a claimant's treatment. *See* 34 Pa.Code § 127.464. Implicit in such a provision is the notion that a reviewer requires sufficient information regarding the nature of the treatment in order to render a recommendation, and that, when a provider fails to submit information with sufficient detail regarding the purposes, objectives, and outcome of treatment, a reviewer may reach a negative conclusion regarding the need for and reasonableness of treatment based on a lack of sufficient information from the provider. The WCJ, in turn, is permitted similarly to reach her own negative inferences and that is what occurred in this case.

Reviewer opined that in order for chiropractic treatment to be deemed necessary or reasonable, a provider must have a treatment plan with therapeutic goals that reveal the timing, type, and duration of procedures adopted to achieve those goals. Reviewer indicated that the chiropractic records should include information of sufficiently specific character as to reveal goals

and outcomes, which would be relevant to the question of whether the treatment was beneficial. Provider's records did not clearly reveal the effectiveness and purpose of continuing the same treatment. In an adversarial proceeding such as this, Claimant was aware of Reviewer's position, and had the opportunity before the WCJ to rebut his opinion, but failed to do so. We do not view this as a shifting of the burden.

B. Did the WCJ and Board Apply Erroneous Standards in Considering Whether the Treatments Were Reasonable and Necessary?

 Claimant also argues that the WCJ and Board erred by applying erroneous standards in evaluating the question of whether the treatments were reasonable and necessary. She first contends that the WCJ's reliance upon the UR Determination contravenes 34 Pa.Code § 127.471, which provides:

(a) Reviewers shall make a definitive determination as to whether the treatment under review is reasonable or necessary. Reviewers may not render advisory opinions as to whether the treatment under review is reasonable or necessary. Reviewers may not render advisory opinions as to whether additional tests are needed. In determining whether the treatment under review is reasonable or necessary, reviewers may consider whether other courses of treatment exist. However, reviewers may not determine that the treatment under review is unreasonable or unnecessary solely on the basis that other courses of treatment exist.

(b) If the reviewer is unable to determine whether the treatment under review is reasonable or necessary, the reviewer shall resolve the issue in favor of the provider under review.

Claimant contends that because Reviewer indicated that Provider's records did not include plans and objectives, Reviewer was essentially unable to make a determination regarding the reasonableness and necessity of the treatment. Claimant contends, therefore, that Reviewer should have resolved "the issue in favor of the provider." *Id.*

Upon review, however, we conclude that Reviewer considered the specific treatments Provider administered to Claimant [15] and opined that they were not necessary and reasonable for clinical reasons, as well as the lack of information indicating the goals and outcomes of the treatments. Moreover, Claimant's reliance upon this regulation is misplaced. The provision in question makes no reference to the depth and breadth of a claimant's medical records and no reference to the absence of pertinent information in such records. Rather, the regulation simply appears to acknowledge the fact that a URO reviewer may not be able to reach a definitive conclusion regarding treatment in a given case. To give the meaning to

---

15. For example, Findings of Fact no. 1(g) and 1(h) suggest that Provider did not identify the location and quality of the treatment with specificity. Also, the UR Determination confirmed that chiropractic treatment for the identified lumbar injury included 14–20 weeks of manipulation to decrease symptomology, but that Provider's records noted "fixations," without specificity of location and quality of the "fixation(s)." (R.R. at 39.) The UR Determination also indicated with regard to Claimant's knee injury that chiropractic protocol recommendations for that injury would include activity restriction and non-weight bearing recommendations. The UR Determination indicated that "[h]ealing could take up to two years," and that surgery "to remove the free fragment" was recommended. The UR Determination suggests that chiropractic manipulation would be appropriate *after* such a surgical procedure "to decrease symptomatology." (R.R. at 39–40.)

this provision that Claimant urges would be to ignore another UR regulation, which specifically provides that a reviewer may conclude that treatment is not reasonable or necessary if a provider fails to submit records. 34 Pa.Code § 127.464(a) (providing that failure to submit records permits URO to render determination that treatment is not reasonable and necessary). As we noted above, it is reasonable to infer that if a provider submits incomplete or non-comprehensive records, a URO is authorized to reach a negative conclusion regarding the treatment at issue. In such circumstances, the provider bears the risk that any missing information will be deemed not to exist and a reviewer may base a decision on missing information or inadequate records.

We have commented that the UR "regulatory scheme clearly contemplates that reviewing doctors assess the reasonableness or necessity of particular treatment in the context of the entire course of care for the work-related injury." *Seamon v. Workers' Comp. Appeal Bd. (Sarno & Son Formals)*, 761 A.2d 1258, 1262 (Pa.Cmwlth. 2000). Reviewer in this case did not indicate that the lack of information relating to the objectives and efficacy of the treatment hampered his ability to render an opinion. The Board in this case referred to our decision in *Solomon v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215 (Pa.Cmwlth.2003), where we relied upon *Seamon*, commenting that

> [t]he UR reviewer, after reviewing the medical file of [the claimant's] chiropractor, concluded that treatment was not reasonable or necessary. The UR reviewer summarized that those records did not provide a rationale for continued chiropractic care when the treatment was assessed, nor did it discuss [the claimant]'s prior treatment plan or clinical outcome. The reviewer concluded

the chiropractor did not provide an adequate reason to continue treatment. *Seamon*, 761 A.2d at 1260.

*Solomon*, 821 A.2d at 218–19. Based upon the foregoing discussion, we conclude that the WCJ did not violate 34 Pa.Code § 127.471(b).

■■■ Claimant next contends that Employer failed to satisfy its burden to prove that the treatment at issue is not reasonable and necessary palliative treatment. "Medical treatment may be reasonable and necessary even when it is designed to manage [a] claimant's symptoms rather than to cure or permanently improve the underlying condition." *Jackson v. Workers' Comp. Appeal Bd. (Boeing)*, 825 A.2d 766, 771 (Pa.Cmwlth.2003). In *Jackson*, the employer distinguished decisions holding that palliative care was reasonable and necessary on the grounds that the facts at issue in that case indicated that the provider's periodic assessment reports showed a significant benefit initially, but that over time, there was no objective evidence of improvement in that claimant's pain. *Id.* at 771. In *Jackson*, the reviewer's report also observed that the indications in the provider's report of non-progressive improvement was supported by published studies that passive modalities for the claimant's condition were suitable in the short-term but could be detrimental if not replaced with a self-monitored home exercise program. *Id.* Thus, although it is true that palliative treatment may be reasonable and necessary under the Act, the Courts have also recognized that a lack of progress in pain improvement is a factor that the WCJ may consider in making the factual determination of whether palliative care is reasonable and necessary.

The WCJ's factual findings concerning Claimant's earlier deposition testimony (which, as noted above, was taken for the

purpose of the earlier UR proceedings) provide:

3. In further opposition to the [UR] Determination, Claimant testified on December 16, 2009. This testimony supports the following relevant facts:

a) Claimant receives chiropractic treatment from the provider under review which consists of exercise to loosen her up, electric treatment on her back and knee and a massage.

b) Claimant normally has a pain level of 7 out of 10 before she gets treatment and a 5 immediately after treatment. Her relief from these chiropractic treatments only lasts throughout the day into the evening and she receives treatment two times per week.

c) Claimant does many of the same treatments at home as she receives in the chiropractor's office including administering biofreeze, heat, exercises and electric stimulation.

d) Claimant uses a Lidoderm patch which is pain medication in conjunction with her chiropractic treatments giving her relief when she wakes up in the morning.

e) Claimant is able to reduce pain in the same amount by using modalities at home as her chiropractors are with treatment.

f) A different physician prescribes pain medication for Claimant.

(F.F. no. 3.)

The WCJ also determined that Claimant does experience pain relief from Provider's treatments, but usually only for the remainder of the day. (F.F. no. 8.) The WCJ found that Claimant was able to perform the same exercises and obtain identical results at home. (*Id.*) Furthermore, the WCJ accepted the substance of Claimant's statement that she believed Provider's treatments permitted her to be more active and that she had experienced an improvement in her functional capabilities. (F.F. no. 4.) The WCJ found Claimant's testimony and statement to be credible, but nevertheless determined that substance of Claimant's testimony and statement was not persuasive with regard to the necessity and reasonableness of Provider's treatment of Claimant.

In short, the WCJ accepted Reviewer's observations among which were his comments regarding: (1) the actual location of Claimant's injuries and the lack of information in the records specifying the location of treatment; (2) the fact that treatment for Claimant's knee injury should be limited to a "ten-to-fourteen day trial of care, three-to-five times per week, which should lead to an independent program of pain control and exercise;" and (3) the lack of "clinical objective outcomes," "written treatment plan with specific therapeutic goals," and "questionnaires or pain diagrams to show any change in Claimant's pain levels." Claimant herself, in response to questions posed on cross-examination in her deposition, acknowledged that she had not been asked before, during, or after treatments (which admittedly occurred apparently under other providers whose treatment was previously the subject of UR review) about her level of pain.[16]

---

16. The cross-examination included the following questions and answers:

Q. When you're treating at Philadelphia Pain Management, I'm assuming you're telling them how long your relief lasts from what they're doing for you; is that right?
A. I haven't told them, no.

Q. Have they ever asked you?
A. No. They just ask me how I'm feeling after the treatment and I'm telling them better and so on and so forth.
Q. So to the best of your knowledge, they don't know exactly how long the relief is lasting for?

(R.R. at 71.) Thus, Claimant's own testimony indicated that the providers in this particular practice did not inquire regarding Claimant's pain levels.

Therefore, even in reviewing Provider's treatments as palliative, the WCJ reasonably determined that the treatments were not reasonable or necessary based upon the lack of any information in the medical reports indicating Provider's plans to address Claimant's pain. It is clear from *Jackson* that the absence of a reasoned approach to manage a claimant's pain is a relevant factor for a workers' compensation judge to consider in making a factual determination regarding the necessity of and reasonableness of a provider's treatment.

Claimant also argues that the WCJ, by considering the lack of objective goals and outcomes in Provider's records, applied an erroneous standard in determining whether Provider's treatment was reasonable and necessary. Claimant contends that by relying upon the lack of such information, the WCJ ignored the key question of whether Claimant needs the treatment for her injuries, and that objective measurements or goals and outcomes are matters that are not relevant to the distinct question of whether treatment is needed. Claimant also contends that the WCJ's determination is inconsistent with the Act based upon the WCJ's determination that the treatment provides Claimant with temporary relief. Thus, Claimant contends it is inconsistent to determine that treatment is unnecessary because, by implication, the need for treatment still exists, even if relief is only temporary. Claimant further argues that the WCJ erred by basing her

decision on the fact that Claimant is able to provide herself with the same treatment, and as effectively, as Provider.

As we concluded above, the WCJ properly considered whether Provider's treatment reflected a plan with goals and objectives. As suggested in *Jackson,* treatment goals and objectives provide a frame of reference to help define and illustrate the need and reasonableness of a particular treatment. Accordingly, we conclude that substantial evidence supports the WCJ's finding that Provider's treatment is not reasonable and necessary either for the purpose of achieving an improved physical condition or as palliative measures.

### C. Did the WCJ Fail to Render a Reasoned Decision?

Claimant's final issue is whether the WCJ did not render a reasoned decision under Section 422(a) of the Act.[17] First, Claimant argues that the WCJ erred in finding Reviewer's Report credible based upon the fact that Reviewer denied that he ever received a statement from Claimant, whereas Claimant contends that she did submit a statement to Reviewer. Claimant also seeks to challenge the WCJ's decision based upon testimony Claimant submitted with regard to the earlier UR Determinations, in which she stated that she experiences a benefit from the treatment. Specifically, Claimant argues that the WCJ's use of Claimant's testimony from the earlier UR proceedings (where the WCJ deemed Claimant to be in the best position to describe the relief she experiences from the treatment) in this case to reach a contrary conclusion

A. No, I don't think they know how long.

Q. Without telling me anything that the doctors said, have you ever discussed with them the possibility of modifying your treatment so your relief can last a little bit longer than just throughout the day?

A. No, I haven't discussed it.

(R.R. at 71–72.)

17. 77 P.S. § 834.

constitutes a capricious disregard of the WCJ's own previous characterization of Claimant's testimony and improperly conflicts with the WCJ's earlier decision.

In this case, the WCJ did find that Claimant testified that she *believed* she experienced benefits from the treatments. Nevertheless, even though the WCJ apparently found Claimant's testimony credible, she did not find Claimant's testimony persuasive. Claimant has not argued to any discernible degree that equitable principles, such as various types of estoppel, apply to preclude a WCJ in a distinct proceeding arising under different facts to review testimony previously determined to be both credible and persuasive. Moreover, Claimant does not sufficiently address this claim, with supporting legal argument and citations, to permit the Court to engage in appellate review of the issue. *See* Pa. R.A.P. 2119. Rather, this appears to be a question involving the weight the WCJ, as fact finder, elected to attribute to Claimant's testimony. The WCJ, of course, is the sole arbiter of the credibility of evidence and the weight to accorded credible evidence. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Consequently, we reject Claimant's claim that the WCJ did not issue a reasoned decision.

Accordingly, we will affirm the Board's order.

### ORDER

AND NOW, this 14th day of January, 2014, the order of the Workers' Compensation Appeal Board is AFFIRMED.