# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Falco and Sons, Inc. and Donegal    :
Mutual Insurance Company,    :
                  Petitioners    :
   :
        v.    :   No. 544 C.D. 2015
   :   Submitted: October 2, 2015
Workers' Compensation Appeal    :
Board (O'Toole),    :
                Respondent    :

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED: November 18, 2015**

Petitioners Falco and Sons, Inc., and Donegal Mutual Insurance Company (collectively Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed a decision of a Workers' Compensation Judge (WCJ) that (1) granted the claim petition filed by Chris O'Toole (Claimant); and (2) denied joinder petitions filed by Employer seeking to join Michael Falco and/or the Uninsured Employer Guarantee Fund (Fund). We affirm the Board's order.

We glean the following facts from the WCJ's findings. Employer hired Claimant in August 2011 to do carpentry work and paid him $80 per day in cash. Butch and Michael Falco are the joint owners of Employer. Butch Falco, however, assigns work to employees. On November 19, 2011, Michael Falco had accepted a side job, *i.e.*, not one performed for Employer, to install a window at the

home of Mark Leo. In 2009, Employer installed a window for Mr. Leo and attempted to fix a problem with the window. After Claimant and another person working for Michael Falco completed the side job, Mr. Leo asked Michael Falco if he could fix the problem with the window that Employer had originally installed. Michael Falco agreed to attempt the fix, believing that it could be done without difficulty. During the process, Claimant sustained an injury that almost resulted in the amputation of his right hand.

Claimant filed a claim petition seeking specific loss benefits and reasonable medical expenses. Employer responded to the claim petition and also filed joinder petitions seeking to add Michael Falco and the Fund as additional defendants. Employer's primary objection and reason for filing the joinder petitions was that it believed Claimant was not in the course of his employment with Employer at the time he injured his hand, but rather he was working for Michael Falco on a side job.

In support of his claim petition, and relevant to our review, Claimant offered his own testimony, the testimony of Michael Falco, and the testimony of Mr. Leo. Claimant testified that on November 19, 2011, he was working on windows at Mr. Leo's house and that "the last thing we did that day was we changed a window out that Butch [Falco] put in about six months before that. The guy didn't like how it functioned and opened, closed." (Reproduced Record (R.R.) at 90a.)

Michael Falco testified that between November 7 and November 18, 2011, he worked with Claimant and another of Employer's employees performing work for Employer. (R.R. at 296a-97a.) Michael Falco testified that he supervised the work of Claimant and the other employee and

2

directed them as to the hours to be worked. (R.R. at 297a-99a.) Michael Falco testified that he told Claimant that the job they were going to perform on November 19, 2011, was a "side job," but he also testified that he had only done one other "side job" within the previous six months, involving his son's mother-in-law. (R.R. at 321a, 322a.) He testified that he had no business presence or identity other than the one associated with Employer. (R.R. at 322a.)

Michael Falco testified that he met Mr. Leo in June or July 2009, when Employer installed the window at Mr. Leo's house. (R.R. at 323a.) He testified that on November 19, 2011, while performing the side job, Mr. Leo asked him to look at the window Employer installed in 2009. Michael Falco told Mr. Leo that, if he could not fix the window within an hour or two, "we'll call my brother and get out here and open up the wall and find out exactly what's wrong . . . I said we will figure it out . . . and we'll get it on [Employer's] schedule." (R.R. at 336a-37a; 252a.) Michael Falco described the November 2011 work performed on the window Employer previously installed as follows:

> [It was] basically warranty work. We—basically are— we are proud of our workmanship and if something is not right and a customer calls, we usually go back and fix it.

(R.R. at 338a.) Michael Falco testified that he did not charge Mr. Leo for the repair work on the window that Employer had installed. (R.R. at 252a, 253a.) Michael Falco testified that his brother Butch Falco generally made arrangements for "warranty" work after having communication with a customer, but that in this instance, he was at the customer's house doing a side job when the customer asked him to take a look at the window. (R.R. at 253a.) Michael Falco testified that he had done "warranty" work for Employer before the November 19, 2011 incident, and that such work occurs approximately three-to-five times per year. (R.R. at

3

254a.)  He testified that "[plumbing jobs are] usually the number one nuisance call back.  It's mostly plumbing issues . . . and we usually go back and take care of it." (*Id*.)  Michael Falco testified that, to his knowledge, Employer did not charge for those "warranty" repairs.  (*Id*.)

Mr. Leo testified that, before November 19, 2011, he had communicated with Butch Falco (majority owner of Employer) and Michael Falco regarding the problem with the window Employer installed.  (R.R. at 145a.)  Butch Falco testified that he did not represent to Mr. Leo that Employer warranted the window it installed in 2009.  (R.R. at 198a.)  He testified that when the window was installed it was a tight fit and that Employer took the window out twice to attempt to fix that problem.  (R.R. at 199a.)  Butch Falco also testified that "that was the best we could do.  And Mark Leo was fine with that when we left."  (*Id*.) Butch Falco testified that he knew Michael Falco was going to work at Mr. Leo's house on November 19, 2011, but he did not know what Michael Falco was going to do at Mr. Leo's house.  (R.R. at 200a-01a.)  Butch Falco testified that he alone has the authority to approve "warranty" work for Employer.  (R.R. at 205a.)  He testified that if problems arise during the course of a project, employees call him first.  (R.R. at 212a.)  Butch Falco testified that Employer does not provide a written warranty, but that, "to some extent," Employer honors the work that it does.  (R.R. at 213a.)

The WCJ found credible the testimony of Claimant, Michael Falco, and Mr. Leo, but the testimony of Butch Falco only credible in part.  (Finding of Fact (F.F.) nos. 13-16.)  With regard to Mr. Leo's credited testimony, the WCJ found that Mr. Leo asked Michael Falco to look at the window Employer installed

4

in 2009 and that Claimant was injured when he was fixing the window. (F.F. no. 13.) With regard to Michael Falco's testimony, the WCJ found that

> Mr. Leo was a customer of [Employer] which is why he repaired the window that had been installed in 2009, and he performed warranty work for Employer between three and five times per year for which there was no charge. His testimony is credible that he considered working on the 2009 window as warranty work.

(F.F. no. 15.) As to Butch Falco's testimony, the WCJ made the following finding:

> The testimony of Harry "Butch" Falco is credible in part. His testimony is credible regarding the nature of the business of [Employer]. However, the testimony of Mr. Leo is accepted over the testimony of Mr. [Butch] Falco with regard to Mr. Leo calling about the window prior to November 19, 2011. The testimony of Michael Falco is accepted over the testimony of Butch Falco regarding [Employer] performing warranty work. Butch Falco's testimony is credible that Claimant was an employee of [Employer's] after being hired in August 2011.

(F.F. no. 16.) Based upon these pertinent findings, the WCJ concluded that Claimant sustained his claim against Employer for his injured right hand, and the WCJ awarded 355 weeks of specific loss benefits. The WCJ, having concluded that Claimant was injured in the course of employment with Employer, denied and dismissed Employer's joinder petitions.

Employer appealed the WCJ's decision to the Board, contending that the WCJ erred in finding that Claimant was injured while performing work for Employer. The Board concluded that substantial evidence supported the WCJ's factual findings, because the evidence established that (1) Claimant was performing work to correct problems with Employer's previous installation of a

5

window; and (2) Employer performed this type of repair as a courtesy to its customers. Thus, the Board affirmed the WCJ's decision.

Employer appealed from the Board's order, raising the questions of whether: (1) the WCJ's finding that the work resulting in Claimant's injury was performed as part of a "warranty" constitutes a legal fiction that is not supported by substantial evidence; and (2) the WCJ erred by denying Employer's joinder petition seeking to place the Fund in the position of Employer in this matter.

In a claim petition, a claimant bears the burden of proving every element necessary to support an award of workers' compensation benefits. *Wetzel v. Workers' Comp. Appeal Bd. (Parkway Serv. Station)*, 92 A.3d 130, 135-36 (Pa. Cmwlth.), *appeal denied*, 105 A.3d 739 (Pa. 2014). In order to satisfy that burden, a claimant must demonstrate that he sustained an injury in the course of employment and that the injury is causally related to his employment. Section 301(c)(1) of the Workers' Compensation Act (Act).[1] When an alleged injury occurs off an employer's premises, it may still be compensable under the Act if a claimant shows that he was engaged in the furtherance of the employer's business or affairs. *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000), *appeal denied*, 788 A.2d 382 (Pa. 2001).

In this case, Employer contends that the WCJ erred in finding that Claimant was furthering its business. Employer argues that the evidence actually shows that Claimant was working on a side job for Michael Falco when he was injured. Employer claims that the record does not support the WCJ's characterization of the work Claimant was performing as "warranty" work.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

6

Employer takes the view that "warranty" work is work that is only performed pursuant to a formal contract or agreement between a business and a customer, and thus, because there is no evidence of a formal agreement, the WCJ's factual finding is not supported by substantial evidence.

Although the WCJ used the term "warranty" to describe the nature of the work Claimant was performing when he was injured, we do not construe the use of this term (nor did the Board) as meaning a formal warranty. Rather, the evidence indicates that Employer had installed a window for a customer that never worked properly. When Employer's partial owner, Michael Falco, was performing side work on his own behalf for the owner, the owner, Mr. Leo, asked him to look at the window Employer had installed in 2009. Mr. Leo testified, credibly, that he had contacted Employer several times about the problem with the window. Michael Falco had previously done work for other customers to fix problems. (R.R. at 254a.) Butch Falco's testimony supports the determination that although Employer does not provide written or formal agreements guaranteeing its work, it will revisit previously performed work in order to ensure customer satisfaction. Employer "honors its work." (R.R. at 213a.) Although this type of work is not formal "warranty" work, it is work that Employer apparently does in order to preserve its good reputation. Thus, it is work that furthers Employer's business or affairs. Consequently, we find no error in the WCJ's determination that Claimant was injured in the course of his employment with Employer.

Employer refers the Court to instances in the record where testimony could support different findings of fact, but as the Board noted and as this Court has often observed, the WCJ is the sole arbiter of credibility determinations. *Womack v. Workers' Comp. Appeal Bd. (The Sch. Dist. of*

7

*Philadelphia)*, 83 A.3d 1139, 1154 (Pa. Cmwlth.), *appeal denied*, 94 A.3d 1011 (Pa. 2014). We may only disturb a WCJ's factual findings if they are not supported by substantial evidence. *Bradley v. Workers' Comp. Appeal Bd. (Cnty. of Delaware)*, 919 A.2d 293, 294 (Pa. Cmwlth. 2006). As we have discussed above, the WCJ's factual findings are supported by credible and substantively sufficient evidence of record.

Accordingly, we affirm the Board's order.[2]

_____
P. KEVIN BROBSON, Judge

_____

[2] Because we conclude that the WCJ did not err in determining that Claimant was in the course of employment with Employer when he injured his hand, we need not address Employer's argument that the WCJ erred in denying Employer's joinder petitions seeking to add Michael Falco and/or the Fund as a defendant.

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Falco and Sons, Inc. and Donegal : 
Mutual Insurance Company, : 
                Petitioners : 
             : 
         v. :   No. 544 C.D. 2015
             : 
Workers' Compensation Appeal : 
Board (O'Toole), : 
            Respondent : 

# **O R D E R**

AND NOW, this 18th day of November, 2015, the order of the Workers' Compensation Appeal Board is AFFIRMED.

 

 

                                 _____

                                 P. KEVIN BROBSON, Judge