Glen Owens,                                         :
                                   Petitioner        :
                                                     :
          v.                                         :
                                                     :
Penn Tech Machinery Corp. (Workers'  :
Compensation Appeal Board),              :          No. 1288 C.D. 2021
                                   Respondent         :          Submitted: February 10, 2023


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                    FILED:  May 30, 2023


          Glen Owens (Claimant) petitions for review from the November 4, 2021, decision and order of the Workers' Compensation Appeal Board (Board), which affirmed a December 14, 2020, decision and order of the Workers' Compensation Judge (WCJ) denying, in part, a utilization review (UR) petition filed by Claimant.  Upon review, we affirm the Board's order.


## I.  Factual & Procedural Background

          Claimant sustained a work-related lumbar injury on May 30, 2014. Reproduced Record (R.R.) at 102a.  In 2017, the parties settled Claimant's wage losses and Penn Tech Machinery Corp. (Employer) agreed to remain responsible for reasonable and necessary medical expenses for Claimant's injury.  *Id*.

In January 2020, Employer requested a UR of treatment provided to Claimant by Dr. Miteswar Purewal, M.D. (Treating Doctor), who is board certified in anesthesiology and the subspecialty of pain management.[1]  *Id*. at 7a-9a & 75a. The request was assigned by a licensed UR organization (URO) to Dr. Nathan Schwartz, M.D. (Reviewing Doctor), who is board certified in anesthesiology.  *Id*. at 14a.  Reviewing Doctor's report stated that he reviewed Treating Doctor's records as well as those from additional treating providers, specifically Dr. Michael Cohen, a neurologist, and Robert Otto, a physical therapist.  *Id*. at 16a.

Based on Reviewing Doctor's records review, Treating Doctor began treating Claimant in March 2016.  The treatment included epidural steroid injections. R.R. at 17a.  In February 2018, Claimant underwent a lumbar laminectomy.  *Id.*  In January 2020, Claimant reported ongoing pain and "issues" with the steroids, so Treating Doctor recommended platelet rich plasma (PRP) injections.[2]  *Id*. at 18a.

Treating Doctor requested to speak with Reviewing Doctor concerning the UR.  *Id*. at 19a.  Reviewing Doctor called Treating Doctor's provided number four times over four days but was unable to leave a message three of those times, as the voicemail box was full.  *Id*.  He was able to leave one message, but it was not returned during the time he was completing his evaluation.  *Id*.  Claimant did not provide a statement for Reviewing Doctor to review as part of his evaluation.  *Id*.

Reviewing Doctor concluded that Treating Doctor's treatment with certain medications, two lumbar epidural steroid injections in a six-month period,

---

[1] The underlying litigation entailed other UR petitions regarding other providers treating Claimant, but only Treating Doctor's UR is at issue in this appeal.  Claimant's Br. at 12.

[2] According to Reviewing Doctor's report, "PRP has a high concentration of growth factors.  It is hypothesized that circulating growth factors and cytokines in PRP will act as humoral mediators to induce the natural healing cascade."  R.R. at 24a.

2

and two medial branch nerve block injections in a six-month period would be reasonable and necessary from January 2, 2020, and ongoing. R.R. at 20a. He concluded that other modalities, including Neurontin, after January 30, 2020, and more frequent steroid and medial branch block injections would not be reasonable and necessary. *Id*. Relevant to this appeal, Reviewing Doctor also concluded that PRP injections would not be reasonable and necessary. Reviewing Doctor opined:

> Although PRP has demonstrated promising results for a variety of musculoskeletal conditions, small sample sizes and lack of standardization of graft preparation have hampered research efforts. There is no peer-reviewed, evidence-based medical literature supporting PRP injected into the epidural space. The injection of epidural PRP is purely experimental. In my opinion, PRP epidural injections recommended [by Treating Doctor] on 01/02/2020 and 01/30/2020, [and] ongoing are not reasonable and necessary.

*Id*. at 24a.

In March 2020, Claimant filed a petition to review Reviewing Doctor's UR concerning Treating Doctor. R.R. at 1a. A hearing was held by telephone in April 2020, at which Claimant testified. *Id*. at 79a. He has not worked since the injury and is currently receiving Social Security Disability benefits. *Id*. at 88a. He had a bad reaction to the steroid injections but is getting "better results" from the PRP; he felt less pain and could take less medication. *Id*. at 85a.

Treating Doctor provided a May 1, 2020, report that was entered into evidence. R.R. at 63a-64a. He stated that Claimant continues to suffer from "post-laminectomy pain syndrome secondary to scar tissue and residual disc material causing ongoing compression of the lumbar roots at the L4/L5 disc levels." *Id*. at 63a. Typically, this can be treated with steroid injections, but Claimant experienced side effects including palpitations, racing thoughts, and confusion. *Id*. Treating

3

Doctor opined that to "provide pain relief and limit the need for opiates, [PRP] was substituted" for the steroid injections. *Id*. He referred to two clinical studies that "have supported the use of PRP in a variety of inflammatory ailments" and attached one to his report: "Efficacy of [PRP] via Lumbar Epidural Route in Chronic Prolapsed Intervertebral Disc Patients—A Pilot Study" by Rohan Bhatia and Gaurav Chopra. *Id*. at 64a-74a. He added that PRP has a low risk of side effects, as it is composed of the patient's own blood. *Id*. at 63a-64a. He stated that ongoing access to PRP is medically necessary for Claimant, as it has provided him "significant relief" greater than that he received with steroids and with fewer side effects. *Id*. at 64a.

The WCJ issued a decision and order on December 14, 2020. R.R. at 110a-111a. The WCJ credited Reviewing Doctor's conclusion that the PRP treatment proposed by Treating Doctor was not reasonable and necessary. *Id*. at 108a. First, the WCJ found that Claimant's testimony did not establish "significant relief" from the treatment. *Id.* Next, the WCJ accepted Reviewing Doctor's explanation that PRP lacks the support of peer-reviewed and evidence-based literature. *Id*. Finally, the WCJ concluded that Treating Doctor's report failed to "persuasively refute" Reviewing Doctor's position, in part because the study Treating Doctor included was by authors with "unspecified credentials." *Id*. The WCJ therefore concluded Employer had met its burden and denied the PRP aspect of Claimant's UR petition. *Id*. at 109a-10a. Claimant appealed to the Board, which affirmed, finding Claimant's arguments either were waived because they were not raised to the WCJ, or they were meritless. R.R. at 146a-50a. Claimant now appeals to this Court.

4

## II. Discussion

On appeal, Claimant challenges the Board's conclusions regarding Reviewing Doctor's failure to review certain medical records; Reviewing Doctor's qualifications; Reviewing Doctor's failure to speak directly with Treating Doctor while considering the UR request; and whether the WCJ's denial of the PRP aspect of Claimant's UR petition was supported by substantial evidence of record.[3]

### A. Records from Claimant's 2018 Surgery

Section 127.452(a) of the UR regulations to the Workers' Compensation Act[4] (Act) states that a party, usually the employer, seeking a UR must file a request using a standard Bureau of Workers' Compensation (Bureau) form and that "[a]ll information required by the form shall be provided." 34 Pa. Code. § 127.452(a). The form requires the employer to specify the provider it seeks to have reviewed, but also "other treating provider(s)." R.R. at 7a. Pursuant to Section 127.403, the Bureau randomly assigns the UR request to an authorized URO. 34 Pa. Code. § 127.403. Section 127.407(a) states that "UROs shall obtain for review all available records of all treatment rendered by all providers to the employe for the work-related injury." 34 Pa. Code. § 127.407(a). Likewise, Section 127.460 requires the URO to request records from "other treating providers," either directly or from the insurer, employer, or claimant. 34 Pa. Code. § 127.460. Section 127.462 reinforces that "UROs shall attempt to obtain records from all providers for the entire

---

[3] This Court reviews the WCJ's adjudication of a UR petition to determine whether the necessary findings of fact are supported by substantial evidence, whether procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Hughes v. Wawa, Inc. (Workers' Comp. Appeal Bd.)*, 271 A.3d 922, 931 n.4 (Pa. Cmwlth. 2021).

[4] Act of June 2, 1915, P.L. 736.

5

course of treatment rendered to the employe for the work-related injury which is the subject of the UR request, regardless of the period of treatment under review." 34 Pa. Code. § 127.462. Section 127.466 states that once the URO obtains the records, it forwards them along with the request and other paperwork to a licensed reviewer for consideration and preparation of a UR determination report. 34 Pa. Code. § 127.466.

Once a UR matter proceeds to litigation, the WCJ's hearing is a *de novo* proceeding in which the UR report must be made part of the record and considered as evidence; however, the UR report's findings are not binding on the WCJ. *Mushow v. Doyle & Roth Mfg. (Workers' Comp. Appeal Bd.)*, 279 A.3d 633, 638 (Pa. Cmwlth. 2022). Determinations concerning the weight and credibility of the UR report, as with any other evidence, are for the WCJ as factfinder. *Id.* The employer bears the burden of proof throughout the UR process to establish that the challenged medical treatment is not reasonable or necessary, no matter which party prevailed at the UR level. *Id.* However, the claimant can present rebuttal evidence, which may be outside of and additional to the documentation relied on by the UR reviewer. *Seamon v. Workers' Comp. Appeal Bd. (Sarno & Son Formals)*, 761 A.2d 1258, 1262 (Pa. Cmwlth. 2000); *see also Hughes v. Wawa, Inc. (Workers' Comp. Appeal Bd.)*, 271 A.3d 922, 933-34 (Pa. Cmwlth. 2021). Because either side may produce additional evidence and the WCJ is not bound by the UR report, we have held that a lack of previous treatment records will not invalidate a UR report. *Hughes*, 271 A.3d 933-34; *Seamon*, 761 A.2d at 1262.

Claimant argues that employers bear the entire and only burden in UR litigation, not just the burden of evidentiary proof before the WCJ but also the pre-petition burden to list all providers, both past and present, in its UR request, so that UR reviewers have every possible medical record available. Claimant's Br. at 18.

6

Specifically, Claimant asserts that a full picture of Claimant's history, including the report from Claimant's 2018 laminectomy by a surgeon not listed on Employer's request, would have convinced Reviewing Doctor of the reasonableness and necessity of the PRP treatment proposed by Treating Doctor. *Id*. at 18-19. Employer responds that while the employer bears the burden of proving treatment is not reasonable or necessary, the claimant still has a "basic rebuttal burden" and that Claimant could have submitted the report in that context. Employer's Br. at 22 & 27. Employer adds that Reviewing Doctor was aware of the 2018 surgery and noted it in his report. *Id*. at 27. As such, according to Employer, the WCJ had discretion to credit Reviewing Doctor's report. Employer's Br. at 29. The WCJ did not address this issue.

To the extent Section 127.452 requires the employer to provide "all information required by the [UR] form," neither the regulation nor the form expressly requires the employer to list every treating provider, past and present. Three of the regulations Claimant refers to, Sections 127.407, 127.460, and 127.462, place the responsibility for records squarely on the URO rather than the employer. *See* 34 Pa. Code § 127.407(a) (stating that "UROs shall obtain for review all available records of all treatment rendered by all providers"); 34 Pa. Code § 127.460(a) (stating that "[a] URO shall request records from other treating providers in writing"); 34 Pa. Code § 127.462 (stating that "UROs shall attempt to obtain records from all providers for the entire course of treatment . . . regardless of the period of treatment under review"). Finally, the failure of a URO to obtain all records does not invalidate the resulting UR report, which may be rebutted by either side with medical evidence that may not have been before the reviewer. *Hughes*, 271 A.3d 933-34; *Seamon*, 761 A.2d at 1262.

7

This matter is on all fours with *Hughes*. There as here, the claimant argued that unfavorable UR reports were void because the employer did not list all treating providers on its request. 271 A.3d at 932. The claimant sought to distinguish *Seamon* on the basis that the employer, not the URO, was at fault for failing to list all providers. *Id*. We disagreed, concluding that an employer's failure to list all providers does not mean that the reviewer will be incompetent to perform the UR because the records the reviewer has, both from the provider under review and other providers that are listed on the UR request, can provide sufficient context and background on a claimant's full history. *Id*. at 932-33. We noted that any deficiency in the records available to the reviewer went to the weight of the UR report and because the claimant can provide additional rebuttal evidence to the WCJ, the employer's failure to list all providers does not invalidate the UR report. *Id*. at 933-34.

Here, Reviewing Doctor's UR report mentions Claimant's 2018 surgery and notes that Treating Doctor treated Claimant for pain both before and after the surgery occurred. R.R. at 15a-18a. If Reviewing Doctor felt it necessary to obtain the surgical records in addition to those of Treating Doctor, he could have obtained them from the surgeon, Employer, or even Claimant. 34 Pa. Code. § 127.460. Moreover, the UR report and Treating Doctor's report both state that the reason for switching to PRP for Claimant's ongoing post-surgery pain was because of Claimant's side effects from traditional steroid therapy and not for any reason directly tied to the surgery itself. R.R. at 18a & 63a.

As in *Hughes*, the lack of a particular medical record will not invalidate the resulting UR report if the pertinent information from that record was available in the records Reviewing Doctor had. Although Employer bore the primary

8

evidentiary burden, Claimant could have provided the WCJ with additional evidence in rebuttal but chose not to submit records or a report from the surgeon. Instead, Claimant submitted only Treating Doctor's report, which did not attribute Claimant's need for PRP to any problem or issue with his surgery but rather to his reaction to the standard steroid therapy. As in *Hughes*, this was not a basis for negating the UR report, but rather, was part of the evidentiary picture for the WCJ to consider and weigh. Claimant has not shown with precedential authority or record references that the WCJ's acceptance of the UR report and rejection of Treating Doctor's report was otherwise arbitrary, capricious, or unsupported by record evidence. Therefore, the WCJ did not err, and the Board did not err in affirming.

## B. Reviewing Doctor's Qualifications

Section 306(f.1)(6)(i) of the Act states that "[UR] of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review." 77 P.S. § 531(6)(i). Similarly, Section 127.466 of the UR regulations states that "[u]pon receipt of the medical records, the URO shall forward the records, the request for UR, the notice of assignment and a Bureau-prescribed instruction sheet to a reviewer licensed by the Commonwealth in the same profession and having the same specialty as the provider under review." 34 Pa. Code § 127.466.

In *Hughes*, the provider's prescriptions, including Oxycontin, were found not reasonable or necessary by the reviewer. 271 A.3d at 926. The claimant challenged the credentials of the reviewer, who was board certified in family medicine, as compared to the treating provider, who was board certified in both

9

family medicine and the pain management subspecialty. *Id*. at 925-26. Because both were board certified in family medicine, we concluded that assignment of the UR to the reviewer was not improper, in that "neither the Act nor the regulations address licensing at a subspecialty level. . . . [B]oth the reviewer and the reviewee were certified in the same specialty, family medicine. The appointment of [the reviewer], therefore, did conform to the requirements of the Act and implementing regulations." *Id*. at 934.

Claimant argues that Employer bore the burden to ensure that Reviewing Doctor's qualifications were the same as that of Treating Doctor, who is board certified in anesthesiology and the pain management subspecialty, whereas Reviewing Doctor is only board certified in anesthesiology. Claimant's Br. at 20. Employer responds that Claimant did not raise this before the WCJ, therefore it is waived. Employer's Br. at 30. Employer adds that individual reviewers are assigned by UROs, not by individual employers or insurers, therefore Employer cannot be held liable for any issues with Reviewing Doctor's credentials. *Id*.

Employer is correct that Claimant did not raise this issue before the WCJ. Therefore, waiver is appropriate. *See, e.g., Fruehof Trailer Corp. v. Workers' Comp. Appeal Bd. (Barnhart)*, 784 A.2d 874, 877-88 (Pa. Cmwlth. 2001). Moreover, pursuant to *Hughes*, because both Treating Doctor and Reviewing Doctor are board certified in anesthesiology, neither Section 306(f.1)(6)(i) of the Act nor Section 127.466 of the regulations has been violated. Finally, Section 127.466 designates the assignment of UR reviewers to the URO, not the employer or insurer, so this task is not within the Employer's UR burden. Claimant's argument is therefore meritless.

10

### C. Sufficiency of Evidence or Legal Error

### i. Reviewing Doctor's Contact with Treating Doctor

Section 127.469 of the UR regulations states:

> The URO shall give the provider under review written notice of the opportunity to discuss treatment decisions with the reviewer. The reviewer shall initiate discussion with the provider under review when such a discussion will assist the reviewer in reaching a determination. If the provider under review declines to discuss treatment decisions with the reviewer, a determination shall be made in the absence of such a discussion.

34 Pa. Code § 127.469. A reviewer's inability or failure to speak with the provider will not invalidate the reviewer's report, which is for the WCJ to consider as part of the evidentiary picture presented by both parties. *Solomon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 821 A.2d 215, 219-20 (Pa. Cmwlth. 2003).

Claimant argues that Reviewing Doctor's UR report is fatally flawed because he did not speak with Treating Doctor to understand why PRP was warranted here. Claimant's Br. at 22. Employer responds that Claimant's argument is little more than an improper collateral attack on the WCJ's acceptance of Reviewing Doctor's UR report over Treating Doctor's report. Employer's Br. at 32-33. The WCJ did not address this issue.

Reviewing Doctor's report acknowledges that Treating Doctor requested a telephone discussion. R.R. at 19a. Reviewing Doctor attempted to contact Treating Doctor four times over four days at the phone number provided to him. *Id.* Three of those calls were unsuccessful because the voicemail was full, and Reviewing Doctor was unable to leave a message. He was able to leave a message on the fourth try but Treating Doctor did not return the call. *Id.* Treating Doctor's

report did not explain why he failed to respond to Reviewing Doctor's message or discuss what he would have said in that conversation beyond what was in his report. *See id*. at 63a-64a. To the extent Claimant believes that a conversation between Treating Doctor and Reviewing Doctor would have changed the result of Reviewing Doctor's report or the outcome of this UR litigation, Claimant cannot fault Reviewing Doctor, Employer, or even the WCJ for the fact that it never happened. Claimant's argument is therefore meritless.

### ii. Reviewing Doctor's Reliance on Medical Literature

Section 127.472 of the UR regulations states:

> The written reports of reviewers shall contain, at a minimum, the following elements: a listing of the records reviewed; documentation of any actual or attempted contacts with the provider under review; findings and conclusions; and a detailed explanation of the reasons for the conclusions reached by the reviewer, *citing generally accepted treatment protocols and medical literature as appropriate.*

34 Pa. Code § 127.472 (emphasis added).

In *Barnhart v. Workers' Compensation Appeal Board (Tremont Borough)* (Pa. Cmwlth., No. 66 C.D. 2017, filed August 16, 2017), 2017 WL 3495788 (unreported),[5] the UR concerned the treating provider's prescription of Provigil to counteract the somnolent effects of the claimant's opioid medications. *Id.*, slip op. at 2, 2017 WL 3495788, at *1. The reviewer opined that the treatment was not reasonable and necessary because it was not supported by medical literature.

---

[5] This Court's unreported memorandum opinions issued after January 15, 2008, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

*Id.* The claimant testified that the Provigil was effective, and the treating provider asserted that medical literature supported that particular use, but the WCJ found for the employer, and the Board affirmed. *Id.*, slip op. at 3-5, 2017 WL 3495788, at **1-2. We affirmed, concluding that the WCJ properly considered all the evidence, including the claimant's testimony and the doctors' competing assertions concerning the medical literature and, as factfinder, was within his discretion to reject the claimant's evidence. *Id.*, slip op. at 7-9, 2017 WL 3495788, at **3-4.

Claimant argues that Reviewing Doctor relied too heavily on the alleged lack of support for PRP in medical literature. Claimant's Br. at 23. Employer responds that Claimant's argument is an improper collateral attack on the WCJ's acceptance of Reviewing Doctor's UR report over Treating Doctor's report. Employer's Br. at 32-33. The WCJ noted that Treating Doctor's report indicated "[m]ultiple studies" in support of PRP for lumbar pain. R.R. at 105a. However, the WCJ credited Reviewing Doctor as to the lack of a sufficient body of peer-reviewed and evidence-based literature in support of PRP for lumbar pain, finding that Treating Doctor's report was not persuasive on this point and that the study copied in the report was by authors with "unspecified credentials." *Id.* at 108a.

Reviewing Doctor noted that Treating Doctor's decision to try PRP arose from Claimant's "issues" with steroid treatment. R.R. at 16a-18a. As explained above, Reviewing Doctor tried to contact Treating Doctor to discuss the matter but was unable to do so. *Id.* at 19a. Reviewing Doctor acknowledged that PRP therapy "has demonstrated promising results," but opined that its "small sample sizes and lack of standardization of graft preparation have hampered research efforts." *Id.* at 24a. Reviewing Doctor concluded: "There is no peer-reviewed,

13

evidence-based medical literature supporting PRP injected into the epidural space. The injection of epidural PRP is purely experimental." *Id*.

Treating Doctor's report cited two studies showing positive effects of PRP for knee pain and included a copy of a 2016 study by Rohan Bhatia and Gaurav Chopra from the Journal of Clinical and Diagnostic Research. R.R. at 64a. The authors acknowledged that "very few studies are available" on the use of PRP for lumbar pain but stated that their trials resulted in 10 patients showing at least gradual improvement from its use. *Id*. at 66a. The authors concluded: "This pilot study suggests a definitive role for PRP via lumbar epidural injection for chronic prolapsed intervertebral disc patients. This needs to be further validated by doing more research by randomized controlled trials which we are doing currently." *Id*. at 72a.

The WCJ's determination to credit Reviewing Doctor over Treating Doctor as to the medical literature was within her discretion and supported by the record. The authors of Treating Doctor's study stated expressly that there are very few studies on the use of PRP for lumbar pain and that theirs was a limited pilot study of 10 patients that could only "suggest" its potential. This admitted limitation confirms Reviewing Doctor's conclusion that PRP remains largely experimental at this time, which is a valid reason that it could be found unreasonable and not necessary. *See Barnhart*. Claimant's argument is therefore meritless.

### iii. PRP as Purely Palliative Care

Treatment may be reasonable and necessary even if only to manage the claimant's symptoms rather than to cure or permanently improve the underlying condition. *Hughes*, 271 A.3d at 935. The WCJ should consider evidence of the palliative effect of treatments under review and weigh that evidence in deciding a

14

UR petition. *Id*. However, the WCJ may also consider countervailing factors such as the extent of relief, the potential risks of the treatment, and the experimental or unproven nature of the treatment. *Womack v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 83 A.3d 1139, 1151 (Pa. Cmwlth. 2014); *Bedford Somerset MHMR v. Workers' Comp. Appeal Bd. (Turner)*, 51 A.3d 267, 274-75 (Pa. Cmwlth. 2012); *Barnhart*, slip op. at 7-9, 2017 WL 3495788, at \*\*3-4.

Claimant argues that the WCJ erred in failing to consider PRP as a purely palliative measure. Claimant's Br. at 21. Employer responds that Claimant's argument is little more than an improper collateral attack on the WCJ's acceptance of Reviewing Doctor's UR report over Treating Doctor's report. Employer's Br. at 32-33. The WCJ noted Claimant's testimony that the PRP had given him relief and Treating Doctor's report to the same effect. R.R. at 105a & 108a. However, the WCJ concluded that Claimant's claimed relief was not "significant" and that his testimony and Treating Doctor's report were outweighed by Reviewing Doctor's conclusion that while PRP shows promise as a palliative treatment, it is too experimental at this time to be reasonable and necessary. *Id*. at 108a.

Reviewing Doctor's UR report was completed in February 2020 and limited to records through the end of January 2020, at which time Treating Doctor had recommended but not yet treated Claimant with PRP. R.R. at 20a. However, the Act specifically contemplates prospective UR consideration. *See* 77 P.S. § 531(6)(i) (stating that "all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review"); *Leca v. Workers' Comp. Appeal Bd. (Phila. Sch. Dist.)*, 39 A.3d 631, 636 (Pa. Cmwlth. 2012) (same). Therefore, Reviewing Doctor addressed PRP generally and opined that while it had shown "promising results," it was still too under-

documented and experimental to be reasonable and necessary. R.R. at 24a. Claimant testified in April 2020 that the PRP gave him better results and less pain, which allowed him to take fewer medications. *Id*. at 85a. Treating Doctor stated in his May 2020 report that Claimant had experienced "significant relief" with it. *Id*. at 63a-64a. Although Reviewing Doctor did not have the benefit of Claimant's testimony and Treating Doctor's report that the treatment had been palliative, the WCJ was within her discretion to agree with Reviewing Doctor about the unproven nature of PRP and to conclude that the benefits Claimant received were insufficient to approve the treatment.[6] Claimant's argument is therefore meritless.[7]

## III. Conclusion

For the foregoing reasons, Claimant has not established that Reviewing Doctor's UR report finding Claimant's PRP treatment unreasonable and unnecessary was invalid, that the WCJ erred in crediting Reviewing Doctor's report and denying

---

[6] Although UR litigations are fact-bound and individual to each claimant, Claimant cites no previous case where PRP was found reasonable and necessary for palliative relief or otherwise.

[7] Claimant also implies that Reviewing Doctor's UR report was untimely. Claimant's Br. at 24-25. The Act requires completion of UR reports within 30 days of the request, but the regulations explain that the 30 days begins when the reviewer receives the records or 35 days from the assignment, giving reviewers a maximum of 65 days from assignment. 77 P.S. § 531(6)(ii); 34 Pa. Code. § 127.465; *Womack v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 83 A.3d 1139, 1142. This Court has held that even a patently untimely UR report will not be invalid as it would punish a party for the failure of the URO. *Womack*, 83 A.3d at 1147-48. Claimant does not assert how Reviewing Doctor's report, which was issued 38 days after assignment, was untimely. Moreover, Claimant did not raise this issue before the WCJ. Claimant's argument is therefore both waived and meritless.

16

that part of Claimant's UR petition, or that the Board erred in affirming the WCJ's decision and order.  We therefore affirm the Board's order.[8]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] In light of our affirmance, Claimant's request for attorney's fees is dismissed.  Claimant's Br. at 27; Section 440 of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a) (providing that attorney's fees are not warranted "when a reasonable basis for the contest has been established by the employer or the insurer.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Glen Owens,       :
     Petitioner   :
            :
   v.       :
            :
Penn Tech Machinery Corp. (Workers' :
Compensation Appeal Board),   :  No. 1288 C.D. 2021
     Respondent  :

## O R D E R

AND NOW, this 30th day of May, 2023, the November 4, 2021, decision and order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge