IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Perry,                              :
                                            :
                    Petitioner              :
                                            :
          v.                                : No. 850 C.D. 2023
                                            : Submitted: July 5, 2024
Mid Atlantic Hose Center, LLC               :
(Workers' Compensation                      :
Appeal Board),                              :
                                            :
                    Respondent              :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED:  September 17, 2024

          Michael Perry (Claimant) petitions for review from a July 20, 2023, decision and order of the Workers' Compensation Appeal Board (Board), which affirmed the December 5, 2022, decision and order of a Workers' Compensation Judge (WCJ), denying Claimant's petition to review a utilization determination (UR Determination) and granting Mid Atlantic Hose Center, LLC's (Employer) petition to review UR Determination.  For the reasons that follow, we affirm.


                              **Background**

          On August 6, 2007, Claimant sustained an injury described as an upper neck and back strain during the course of his employment with Employer.  WCJ

Opinion, 12/05/22, Finding of Fact (F.F.) No. 1.[1] He was paid benefits pursuant to a Notice of Temporary Compensation Payable. *Id.* In 2009, the description of Claimant's injury was expanded to include an aggravation and exacerbation of an L5-S1 spondylolisthesis, strain and sprain of the lower cervical and thoracic spine with fibro myositis of the lower cervical and thoracic spine, and aggravation of facet disease in the upper thoracic spine. *Id.*, F.F. No. 2. In 2012, the description of Claimant's work injury was again expanded to include Complex Regional Pain Syndrome (CRPS)/Reflex Sympathetic Dystrophy (RSD). *Id.* at 3.

On June 17, 2021, Employer requested a utilization review (UR) of treatment provided to Claimant by, *inter alia*, Johnmichael Pizzimenti, D.C., Steven Haas D.C., Miteswar Purewal, M.D., and William Ingram, D.O. from June 15, 2021, and ongoing.[2] WCJ Opinion, F.F. No. 4; R.R. at 66a. A URO assigned Chad Rosborough, D.C. to review the treatment provided by Drs. Pizzimenti and Haas; Soon Jung, M.D. to review the treatment provided by Dr. Purewal; and Jared Ramsey, D.O. to review the treatment provided by Dr. Ingram. *Id.*, F.F. Nos. 7, 8, and 9. We will discuss their findings in turn.

### *UR Request – Treatment by Drs. Pizzimenti and Haas*

Dr. Rosborough's report indicated that he reviewed Dr. Pizzimenti's records from April 22, 2014, through June 17, 2021. Dr. Rosborough's UR Report,

---

[1] The WCJ opinion is found at page 556a of the Reproduced Record (R.R.).

[2] Section 306(f.1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §531, requires that disputes concerning the reasonableness and necessity of medical treatment be submitted for UR by a utilization review organization (URO) authorized by the Department of Labor and Industry to perform such reviews. Pursuant to Section 306(f.1)(6)(ii) and (iv) of the Act, 77 P.S. §531(6)(ii) and (iv), the URO is to issue a report that is made part of the record before the WCJ. The WCJ shall consider the report as evidence, but is not bound by it.

8/18/21, R.R. at 155a-167a.  He also reviewed Dr. Haas's records from September 29, 2020, through May 20, 2021.  *Id.*, R.R. at 168a.  Dr. Rosborough concluded that as of June 22, 2021, treatments including chiropractic manipulative therapy, mechanical traction, infrared, massage, therapeutic exercise and activities, and Covid supplies were neither reasonable nor necessary for Claimant.  WCJ Opinion, F.F. No. 7a; Dr. Rosborough's UR Report, R.R. at 170a.  Dr. Rosborough opined that "[w]hile [CRPS] is much more complex, treatment frequencies and durations are typically 2 to 3 times per week for 10 to 15 weeks." Dr. Rosborough's UR Report, R.R. at 171a.  In Claimant's case, he received chiropractic treatment for eight years.  Treatment documentation did not demonstrate that treatment was resulting in ongoing, significant, and continued improvement.  WCJ Opinion, F.F. No. 7b.  Dr. Rosborough further stated that Dr. Haas, who did not provide treatment during the period under review, was following the same protocol as Dr. Pizzimenti; thus, any treatment Dr. Haas would render on or after June 22, 2021, was also neither reasonable nor necessary.  *Id.*

### *UR Request – Treatment by Dr. Purewal*

Dr. Jung's report indicated that he reviewed Dr. Purewal's records from March 12, 2020, through May 20, 2021.  Dr. Jung's UR Report, 8/23/21, R.R. at 108a.  Dr. Purewal treated Claimant with stellate ganglion blocks and Ketamine infusions.  *Id.* at 109a.  Dr. Jung opined that as of June 21, 2021, and ongoing, the treatments were reasonable and necessary, and that stellate ganglion blocks and Ketamine infusions are accepted treatment for CRPS.  The treatments were reasonable and necessary because they provided Claimant 50% relief for two to three

3

months after each treatment and allowed Claimant to avoid using opioids. WCJ Opinion, F.F. No. 8a-8b.

## *UR Request – Treatment by Dr. Ingram*

Dr. Ramsey's report indicated that he reviewed the records of Dr. Ingram and other treating doctors and massage therapists from August 11, 2003, through June 24, 2021. Dr. Ramsey's UR Report, 8/17/21, R.R. at 139a-43a. Specifically, Dr. Ingram gave Claimant trigger point injections and prescribed Claimant the following medications: Meloxicam, Cymbalta, Gabapentin, Lorazepam, Ambien, Soma and Omeprazole. Dr. Ramsey opined that Gabapentin and Lorazepam are effective for neuropathic pain and that trigger point injections are effective for myofascial pain. Furthermore, Meloxicam and Cymbalta are recommended therapy for chronic cervical and lumbar pain. WCJ Opinion, F.F. 9a-9b; Dr. Ramsey's UR Report, R.R. at 146a. Dr. Ramsey determined, however, that Ambien and Omeprazole are not indicated for Claimant's diagnosis. WCJ Opinion, F.F. No. 9c.

## **Proceedings before the WCJ/Board**

Claimant filed a petition for review of UR Determination on August 31, 2021, seeking review of treatment by Drs. Pizzimenti, Haas and Ingram. R.R. at 88a. On September 22, 2021, Employer filed a petition for review of UR Determination, requesting review of treatment by Drs. Purewal and Ingram. *Id.* at 85a. Thereafter, in December of 2021, Claimant filed a penalty petition alleging Employer's failure to pay for reasonable and necessary medical treatment. *Id.* at 175a.

4

Before the WCJ, Employer presented the deposition testimony of Scott Epstein, M.D. Dr. Epstein is Board Certified in Physical Medicine and Rehabilitation as well as electrodiagnostic medicine. He testified that he has experience treating CRPS and that he also treats injuries to the cervical, thoracic, and lumbar spines, discogenic injuries, spondylolisthesis, fibro myositis, and facet disease. WCJ Opinion, F.F. No. 10a.

Dr. Epstein examined Claimant on September 10, 2020. He took a history from Claimant that Claimant injured himself when he felt pain between his shoulder blades as he was using a wrench to loosen a bolt. Claimant indicated that he was treating with Dr. Ingram and was receiving therapy and chiropractic treatment. Claimant also indicated that he was receiving Ketamine injections and was prescribed a number of medications including Ambien, Cymbalta, Gabapentin and Meloxicam. WCJ Opinion, F.F. No. 10c.

Claimant related that he was experiencing multiple symptoms including swelling, burning, stiffness and pain, and color changes in both hands. Claimant further related that he suffered from headaches, pain in his shoulder joints, and tightness in his buttocks and hamstring muscles. Claimant stated that his pain would never completely go away, and that Ketamine would decrease the burning, swelling, and color changes for about a month and a half. WCJ Opinion, F.F. No. 10d.

Dr. Epstein's physical examination of Claimant's shoulders, neck, mid-back, and upper and lower limbs was objectively normal. He testified that he could not find any evidence of CRPS on physical examination. He specifically testified that he could not find any swelling, decolorization, temperature change, sweating, excessive dryness, or fingernail changes. WCJ Opinion, F.F. No. 10e.

5

Dr. Epstein stated that he reviewed surveillance videos of Claimant taken on July 15, 2020, and November 18, 2021. In the videos, Dr. Epstein observed Claimant moving empty trash cans and blowing leaves with a leaf blower. WCJ Opinion, F.F. 10f.

Dr. Epstein related that Claimant was receiving chiropractic manipulative therapy, mechanical traction, infrared therapeutic exercises, Covid supplies, massage, and chiropractic treatment. Claimant was also receiving stellate ganglion blocks, Ketamine infusions, and follow-up visits with Dr. Purewal. Claimant was also being given trigger point injections, Meloxicam, Cymbalta, Gabapentin, Lorazepam, Ambien, Soma, and Omeprazole from Dr. Ingram. WCJ Opinion, F.F. No. 10g.

Dr. Epstein testified that, as of June 21, 2021, none of the treatment being rendered by Drs. Pizzimenti, Haas, Purewal or Ingram was reasonable or necessary. He explained that his physical examination of Claimant on September 10, 2020, showed no objective abnormality. WCJ Opinion, F.F. No. 10h.

Employer also presented the deposition testimony of Brian Rebisz, D.C., a chiropractor licensed in the Commonwealth of Pennsylvania. Dr. Rebisz testified that he has treated CRPS, cervical, thoracic, and lumbosacral injuries, discogenic injuries, spondylolisthesis, fibro myositis, and facet disease. He is Board Certified by the American Chiropractic Rehabilitation Board. WCJ Opinion, F.F. No. 11a-11b.

Dr. Rebisz examined Claimant on July 15, 2020. He testified that he took a history from Claimant that he was turning a wrench when he felt severe pain in his back. Claimant indicated that he was experiencing pain in his neck, midback,

and low back. Dr. Rebisz stated that on physical examination, he did not make any findings of CRPS. WCJ Opinion, F.F. No. 11c-11f.

Dr. Rebisz testified that he reviewed Claimant's treatment records from Drs. Pizzimenti and Haas. He noted that Claimant attended 526 office visits for chiropractic treatment since 2014. He also reviewed a surveillance video from November 18, 2021, showing Claimant using a leaf blower. WCJ Opinion, F.F. 11g-11h.

Dr. Rebisz stated that as of June 21, 2021, treatment by Drs. Pizzimenti and Haas was neither reasonable nor necessary. He explained that 526 office visits were excessive, and that Claimant did not achieve therapeutic gains. He believed that Claimant had reached maximum medical improvement. WCJ Opinion, F.F. No. 11i.

Dr. Rebisz also testified that the chiropractic treatment being rendered to Claimant was not palliative. He indicated that the 526 office visits were creating "a physician dependence rather than functional gain or pain control." WCJ Opinion, F.F. No. 11j. Dr. Rebisz determined that chiropractic care was rendered in an inappropriate manner. *Id.*

Claimant presented a report from Dr. Pizzimenti. Dr. Pizzimenti opined that Claimant had been diagnosed with CRPS and that Claimant reported he has benefitted from chiropractic care including maintaining lower pain levels and better tolerance in performing activities of daily living. WCJ Opinion, F.F. No. 12a-12b.

Claimant also presented the report of Dr. Ingram. Dr. Ingram opined that the prescription Ambien is needed for treatment of insomnia which results from chronic pain. He further opined that Omeprazole is needed for gastroesophageal

7

reflux and other gastrointestinal symptoms cause by other medications. WCJ Opinion, F.F. No. 15a-15b.

Claimant testified on his own behalf. He indicated that he has pain from "head to toe," including his head, shoulders, neck, upper, middle, and lower back, legs, knees, and shin. WCJ Opinion, F.F. No. 13a. Furthermore, he suffers from pain in his face, ears, and hands, and experiences a stabbing pain in his upper thoracic spine. Claimant also suffers from an aching stiff pain in his lumbar spine that shoots into his hamstrings and knees. *Id.*

Claimant testified that his treatment with Drs. Pizzimenti and Haas helped him with his headaches, stiff neck, and leg pain. He also related that he does not receive permanent relief from his chiropractic treatment. WCJ Opinion, F.F. 13e-13f.

Claimant stated that he began seeing Dr. Purewal in March of 2020, for stellate ganglion blocks and Ketamine injections. He receives temporary relief from this treatment. WCJ Opinion, F.F. No. 13g.

Claimant testified that he engages in activities such as taking out the trash, cutting his grass, raking leaves, and operating a leaf blower. Claimant stated that he spends time at his property at the New Jersey Shore. Claimant performs minor maintenance and work at the property and revealed that he drives himself to the shore. WCJ Opinion, F.F. No. 13i.

The WCJ reviewed the video surveillance of Claimant taken on July 15, 2020, and November 18, 2021. The WCJ summarized his observations as follows:

> a. On July 15, 2020, Claimant is seen on video walking slowly into a physician's office. After the appointment, he was driven home, where he

8

immediately brings what appear to be trash containers back into his house.  While doing so, he is using both hands and bending intermittently.

b.  On November 18, 2021, Claimant is seen on video at a physician's office.  Later in the day, he is seen on video operating a leaf blower.  He is using both hands at multiple angles while bending and contorting his body on a continuous basis[.]

WCJ Opinion, F.F. No. 14a-14b.

Finally, Claimant entered into evidence an impairment rating evaluation (IRE) performed by Lynn Yang, M.D.  Dr. Yang performed the IRE on May 17, 2022.  She opined that Claimant had reached maximum medical improvement and that he has a 71% whole-person impairment.  WCJ Opinion, F.F. No. 16a-16c.

Regarding Claimant's penalty petition, the WCJ found as follows:

17.  Claimant submitted prescription bills from WIRX Pharmacy with dates of service of July 19, 2019, through October 21, 2019.  (Exhibit C-6).  The [Explanation of Benefits (EOB)] submitted by [Employer] That [sic] establishes that all of these bills from WIRX Pharmacy were paid in a timely manner shortly after the date of service[.]

18.  Claimant submitted documentation that he paid $1[,]800.00 to the Vincera Core Physicians in $900.00 installments on January 9, 2020, and November 5, 2019, for a date of service of March 31, 2016.  (Exhibit C-6).  The[] EOB [] submitted by [Employer] establishes that [Employer] paid Vincera Core Physicians for treatment rendered on May 24, 2016.

19.  Claimant submitted documentation that he paid $60.00 to Quest Diagnostics on account of testing done on June 27, 2018.  (Exhibit C-6).  No documentation was submitted to establish that the treatment was related to the

9

work injury. [Employer] submitted an EOB establishing that payment for the treatment was denied.

20. Claimant submitted a "balance bill" in the amount of $30.00 that he received from Cardiology Consultants/Dr. Karalis for treatment rendered on November 29, 2011. (Exhibit C[-]6). [Employer] submitted an EOB establishing that the treatment was denied for being unrelated to the work injury.

21. Claimant submitted a $310.00 bill from Parkway [C]linical [L]aboratories and a $960.00 bill notice from Blue Cross Blue Shield. (Exhibit C-6). No documentation was submitted that the treatment was related to the work injury.

22. Claimant submitted bills from Scomed for pads for a water heating unit incurred from July 13, 2021, through January 22, 2022. (Exhibit C-6). [Employer] submitted the [Health Care Financing Administration] Forms establishing that the treatment was prescribed by Dr. Pizzimenti, whose treatment was under [UR] over the period of time the pads were supplied, and which was found to be neither reasonable nor necessary.

23. Claimant submitted a bill from Relievus in the amount of $160.00 (Exhibit C-6). No documentation was submitted that the treatment was related to the work injury.

WCJ Opinion, F.F. Nos. 17-23.

Based on his review of the evidence and testimony presented by the parties, the WCJ found Claimant credible as to his ongoing symptoms related to his employment injury. The WCJ noted, however, that "greater weight in this mat[t]er must be given to medical reviewers as the issue is reasonable and necessary medical treatment." WCJ Opinion, F.F. No. 24.

The WCJ found Dr. Rebisz credible and convincing that Claimant had 526 chiropractic office visits without any appreciable benefit and that Claimant's

chiropractic treatment had not shown any functional gain or pain control. WCJ Opinion, F.F. No. 25.

The WCJ also found Dr. Epstein to be credible and convincing that the treatments by Drs. Purewal and Ingram were neither reasonable nor necessary. The WCJ noted that Dr. Epstein's opinion was based on his objectively normal physical examination of Claimant. The WCJ further accepted as credible Dr. Epstein's testimony that, as of June 22, 2021, the treatment of Drs. Pizzimenti and Haas was neither reasonable nor necessary. WCJ Opinion, F.F. No. 26.

The WCJ held that Dr. Ramsey was not convincing to the extent that he found Dr. Ingram's treatment of Claimant to be reasonable and necessary. The WCJ emphasized that Dr. Ramsey did not conduct a physical examination and did not review the video surveillance of Claimant. Furthermore, the WCJ noted, Dr. Ramsey's opinion was inconsistent with the credible opinion of Dr. Epstein. WCJ Opinion, F.F. No. 27.

Finally, the WCJ determined that Dr. Pizzimenti was not convincing that his treatment, and the treatment of Dr. Haas, was reasonable and necessary. Dr. Pizzimenti did not review the video surveillance. Moreover, Dr. Pizzimenti's opinions were inconsistent with the credible opinions of Dr. Rebisz and Dr. Epstein. WCJ Opinion, F.F. No. 28.

The WCJ concluded that Employer sustained its burden of proving that, as of June 22, 2021, the treatment of Drs. Pizzimenti, Haas, Purewal and Ingram was neither reasonable nor necessary; that Claimant failed to sustain his burden of proving that Employer wrongfully failed to pay medical bills or wrongfully denied reimbursement for out-of-pocket expenses; and that Claimant failed to sustain his burden of proving a violation of the Act.

11

Claimant appealed the WCJ decision, which the Board affirmed. Claimant now appeals the Board's order to this Court.[3]

## Issues

On appeal, Claimant challenges whether there were deficiencies in the UR process such that the UR determination was *void ab initio*; whether Employer presented competent evidence; whether the WCJ issued a reasoned decision; and whether the WCJ erred in denying Claimant's penalty petition.

## Discussion

### *UR Deficiencies*

Initially, Claimant argues that the UR Request forms in this action were not properly completed because they failed to list all treating physicians over the entirety of Claimant's claim. Citing the UR Regulations, Claimant asserts that it is mandatory for the UR Request forms to be fully completed so that the URO has the opportunity to seek all medical records and the reviewing doctor has access to critical information.

Employer responds that this Court has previously ruled that the failure to list all treating physicians in a UR request does not invalidate the UR process. *See Hughes v. Wawa, Inc. (Workers' Compensation Appeal Board)*, 271 A.3d 922 (Pa. Cmwlth. 2021). We agree with Employer.

This Court's recent decision in *Hughes* is on point. Akin to this case, the claimant in *Hughes* argued that the UR determinations at issue were invalid

---

[3] This Court reviews a WCJ's adjudication of a UR petition to determine whether the necessary findings of fact are supported by substantial evidence, whether procedures were violated, or whether an error of law was committed. *Hughes v. Wawa, Inc. (Workers' Compensation Appeal Board)*, 271 A.3d 922, 931 n.4 (Pa. Cmwlth. 2021).

12

because the insurer failed to list "other medical providers" on the UR requests. *Id.* at 931. This Court rejected the claimant's arguments for several reasons.

First, contrary to the claimant's arguments, the *Hughes* Court did not agree that the failure to list all of a claimant's other treatment providers on the UR request form made it impossible for the reviewing doctor to obtain and review other providers' records. Indeed, the record demonstrated that the reviewing doctors were able to, and in fact did, review "copious" records from the claimant's other treatment providers. *Id.* at 933. The reviewing doctors both demonstrated their knowledge of the claimant's current condition and recounted his lengthy medical history and treatments.

Second, the *Hughes* Court disagreed with the claimant's argument that this Court's holding in *Seamon v. Workers' Compensation Appeal Board (Sarno & Son Formals)*, 761 A.2d 1258 (Pa. Cmwlth. 2000) (en banc), could be distinguished from the case then before it. In *Seamon*, this Court rejected a claimant's argument that a URO's failure to obtain medical records from his earlier treating doctors rendered the UR determinations inadmissible and/or incompetent to support a finding that the treatment was not reasonable or necessary. The *Hughes* Court reasoned that a URO's failure to obtain medical records was not fundamentally different than the failure to list other treatment providers on a UR request form. In either case, a reviewer would not automatically be unable to render a determination of reasonableness or necessity. *Id.* at 933. Notably, the claimant in *Hughes* failed to identify any other provider's records that were not reviewed and that would have changed the determination of the reviewers. *Id.*

Finally, the *Hughes* Court emphasized that the absence of other providers' medical records, if any, goes to the WCJ's weighing of the evidence,

13

which is beyond this Court's scope of review. *Id.* at 933 (citing *Soloman v. Workers' Compensation Appeal Board (City of Philadelphia)*, 821 A.2d 215 (Pa. Cmwlth. 2003)). The *Hughes* Court noted:

> [T]he regulatory scheme developed under the Act contemplates assessment of reasonableness and necessity of a specific provider's treatment in the context of the overall course of care provided to the claimant. However, we [have] expressly found an incomplete documentary medical history "does not automatically preclude a UR doctor from making a determination of reasonableness or necessity; nor does it preclude a WCJ from crediting and relying on the UR report."

*Id.* at 933 (quoting *Patton v. Workers' Compensation Appeal Board (Delaware River Port Authority)* (Pa. Cmwlth., No. 1095 C.D. 2017, filed February 8, 2018), slip op. at 8).[4]

We will not belabor this issue with an exhaustive analysis. This Court has painstakingly and expressly rejected this argument before. *See Patton; Hughes; Owens v. Penn Tech Machinery Corporation (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 1288 C.D. 2021, filed May 30, 2023), *appeal denied*, 307 A.3d 1196 (Pa. 2023) (considering and rejecting the argument that UR requests were defective because they did not list all of a claimant's other treatment providers).

Determinations concerning the weight and credibility of a UR report, as with any other evidence, are for the WCJ. *Mushow v. Doyle and Roth Manufacturing (Workers' Compensation Appeal Board)*, 279 A.3d 633, 638 (Pa. Cmwlth. 2022). Importantly, once a UR matter proceeds to litigation, the WCJ's

---

[4] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

14

hearing is a *de novo* proceeding where the UR report must be made part of the record and considered as evidence. *Id.* An employer bears the burden of proof throughout the UR process to establish that the challenged medical treatment is not reasonable or necessary, no matter which party prevailed at the UR level. *Id.*

Nevertheless, a claimant can present rebuttable evidence, which may be outside of, and in addition to, the documentation relied on by the UR reviewer. *Seamon*, 761 A.2d at 1262; *Patton*, slip op. at 8; *Hughes*, 271 A.3d 933-34; *Owens*, slip op. at 6. Thus, because either side may produce additional evidence and the WCJ is not bound by the UR report, we have held that a lack of previous treatment records does not render a UR report void. *Seamon*, 761 A.2d 1262; *Patton*, slip op. at 8; *Hughes*, 271 A.3d 933; *Owens*, slip op. at 6. Here, Claimant did not present credible medical evidence to rebut the UR Determination; thus, his argument is without merit.

Next, Claimant argues that the UR process was defective because Employer had a mandatory duty to prove that the reviewing doctors were licensed in the same profession and specialty as the treating doctors. Claimant contends that:

> [l]isting a doctor's supposed area of practice on a [UR] form (the only information in this case) is not equivalent to providing [Claimant] and the [C]ourt with the [reviewing doctor's] Curriculum Vitae. [Employer] has not presented competent evidence to satisfy this element of their [sic] *"never shifting burden of proof"* to establish that each mandatory duty was satisfied.

Claimant's Brief at 23 (emphasis in the original). Employer did not respond to this issue.

We need look no further than our decision in *Owens* to reject this argument. In *Owens*, the claimant argued that the employer bore the burden to ensure that the reviewing doctor's qualifications were the same as that of the treating

15

doctor. In response, the employer asserted, *inter alia*, that individual reviewers are assigned by the UROs, not by the individual employers or insurers; thus, the employer could not be held accountable for any issues related to the reviewing doctor's credentials. *Owens*, slip op. at 10.

It is not entirely clear that this issue was preserved below. Presuming that it was, we reject it in short order. Section 306(f.1)(6)(i) of the Act requires that a reviewer be licensed in the same profession and with the same or similar specialty as the provider under review. 77 P.S. §531(6)(i). Section 127.466 of the UR Regulations requires that, upon receipt of medical records, *the URO* shall forward the records, the UR request, the notice of assignment, and an instruction sheet to "a reviewer licensed by the Commonwealth in the same profession and having the same specialty under review." 37 Pa. Code §127.466. Contrary to Claimant's assertions, there is no evidentiary burden placed on an employer or insurer to prove a reviewing doctor's credentials. Because the onus is on the URO, and not the employer/insurer to choose the reviewing doctor, Claimant's argument is without merit.

Claimant also argues that the UR Determination in this case is defective because none of the reviewing doctors "formed opinions in accordance with the proper standards by which to evaluate treatment and/or failed to provide sufficient, let alone 'detailed' explanation for their conclusions." Claimant's Brief at 25. Employer did not respond to this argument.

Section 127.472 of the UR Regulations addresses the duties of reviewers, stating:

> The written reports of reviewers shall contain, at a minimum, the following elements: a listing of the records reviewed; documentation of any actual or attempted contacts with the provider under review; findings and conclusions; and a detailed explanation of the reasons for

16

the conclusions reached by the reviewer, citing generally accepted treatment protocols and medical literature as appropriate.

34 Pa. Code §127.472.

At the outset, we note that Claimant does not elaborate on this argument or identify any specific instances where a UR Report is lacking in some manner. Based on our careful review of each of the UR Reports in this case, we cannot say that the reviewers failed to meet the requirements of Section 127.472. Each reviewing doctor listed the records reviewed;[5] documented contacts/attempted contacts with the provider under review;[6] and made findings and conclusions, providing a detailed explanation of the reasons for the conclusions reached.[7] Stated simply, the record is devoid of any facts supporting Claimant's assertion that the UR Reports in this case are defective. Accordingly, we reject this argument as well.

Claimant's last attack on the UR process implies that the UR Reports in this case were untimely. Claimant asks us to "reconsider" our decision in *Womack v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 83 A.3d 1139 (Pa. Cmwlth. 2014). In *Womack*, the URO issued its determination 11 days late. The claimant asserted that the determination was therefore void. This Court refused to penalize the employer, who did not supervise or control the URO, stating:

[The employer] here did not fail to follow any prescribed statutory time period in either the Act or the [R]egulations. Yet, [the claimant] asks that we essentially prejudice [the

---

[5] *See* Dr. Jung's report, R.R. at 108a; Dr. Ramsey's report, R.R. at 139a-143a; and Dr. Rosborough's report, R.R. at 155a-168a.

[6] *See* Dr. Jung's report, R.R. at 109a; Dr. Ramsey's report, R.R. at 145a; and Dr. Rosborough's report, R.R. at 169a, 171a.

[7] *See* Dr. Jung's report, R.R. at 110a; Dr. Ramsey's report, R.R. at 145-47a; and Dr. Rosborough's report, R.R. at 170a-72a.

17

employer's] rights under the Act to seek review of medical treatment for medical necessity and reasonableness because an entity beyond [the employer's] control, the URO, failed to meet its statutory and regulatory deadlines to issue a written determination. We see no basis in the Act or the regulations, even in light of the Act's remedial nature and affording it liberal construction in favor of the injured worker, to hold [the employer], or even a claimant or a provider if they happen to request utilization review under the Act, so accountable.

*Id.* at 1143. In short, because Claimant has not presented a compelling reason to revisit this well-reasoned decision, *see Patton*, slip op. at 12; *Owens*, slip op. at 16 n. 7, we will not do so here.

## *Competent Evidence*

This portion of Claimant's argument focuses on the testimony of Dr. Epstein. Claimant appears to argue that Dr. Epstein's testimony was not competent because he did not accept Claimant's adjudicated injuries; rather, Claimant argues that Dr. Epstein opined that Claimant had no injury at all.[8] We do not agree.

Whether "medical evidence is competent is a conclusion of law reviewable on appeal." *National Fiberstock Corp. (Greater New York Mutual Insurance Company) v. Workers' Compensation Appeal Board (Grahl)*, 955 A.2d 1057, 1063 n.6 (Pa. Cmwlth. 2008). "Where an expert's opinion is based on an assumption that is contrary to the established facts of record, that opinion is [incompetent]." *Taylor v. Workers' Compensation Appeal Board (Servistar Corp.)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005). However, "[a] medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information." *American Contracting Enterprises, Inc. v. Workers' Compensation*

---

[8] Employer's brief does not address this issue.

18

*Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001) (emphasis in original). "[I]t is well established that the opinion of a medical expert must be viewed *as a whole*, and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies." *Id.* (emphasis in original).

Contrary to Claimant's assertions, the record clearly reflects that Dr. Epstein consistently acknowledged Claimant's adjudicated injuries. *See* Deposition of Scott Epstein, M.D., 3/17/22, R.R. at 252a; 268a-269a; 271a-272a.[9] Claimant's dispute centers on Dr. Epstein's testimony that, following his examination of Claimant on September 10, 2020, there was no longer any *evidence of an injury*. As

---

[9] During cross-examination, Dr. Epstein testified:

> Q. Doctor, not to keep repeating the same question, but just to make sure that I understand correctly, the reason why you feel [Claimant] does not need treatment is because you do not believe [Claimant] has any injury, correct?
>
> A. It's my opinion that any injury he may have sustained to his neck, his low back, to his upper limbs were [sic] not clinically evident when I saw him on September 10. It is, therefore, my opinion that none of those entities were present. So, therefore, he required no further treatment for any such entities because he didn't have them anymore.
>
> Q. That's the point. You don't believe he had the injuries, and if he doesn't have the injuries, if he doesn't have an injury, he doesn't need treatment, right?
>
> A. It's my opinion he had no objective abnormalities on exam when I saw him on September 10th, 2020; therefore, he does not require any further treatment.

Deposition of Scott Epstein, M.D., 3/17/22, R.R. at 275a.

19

the Board aptly stated, "[t]o assert that Dr. Epstein did not believe there ever was an injury is to misrepresent his testimony." Board Opinion, 7/20/23, R.R. at 591a.[10]

*Reasoned Decision*

Claimant also asserts that the WCJ's decision is not sufficiently reasoned or supported by the record. In essence, Claimant's argument centers on his belief that the WCJ either did not provide sufficient reasons to support his credibility determinations or that the reasons the WCJ did set forth "make[] no sense."[11]

Section 422(a) of the Act provides, in pertinent part, that all parties in a workers' compensation case are entitled to "a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834. The decision of the WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

To satisfy this standard, a WCJ is not required to discuss all evidence in the record. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006). Rather, Section 422(a) of the Act requires a WCJ to issue a reasoned decision so that this Court does not have to "imagine" the reasons why a WCJ finds the testimony of one witness to

_____

[10] We also reject Claimant's argument that Dr. Epstein's testimony was incompetent because his examination of Claimant was remote in time from the period under review and therefore did not reflect Claimant's current condition. While this aspect of Dr. Epstein's review impacted the weight afforded his testimony by the WCJ, it did not render his testimony incompetent.

[11] Employer did not respond to this argument.

20

be more credible than the testimony of another witness. *Id.* at 196. "When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence." Section 422(a) of the Act.

Furthermore, pursuant to Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where there is conflicting witness testimony. This requirement is satisfied if the WCJ summarizes the witnesses' testimony "and adequately explain[s] his credibility determinations." *Clear Channel Broadcasting v. Workers' Compensation Appeal Board (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007). "[W]hile summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). Finally, a WCJ cannot ignore uncontroverted evidence, but must adequately explain the reasons why such evidence has been rejected. Section 422(a) of the Act.

Based on our review, we cannot say that the WCJ failed to issue a reasoned decision. Here, the WCJ satisfactorily summarized the reports of the reviewing doctors as well as Claimant's testimony and the expert medical testimony of Drs. Epstein and Rebisz. Furthermore, the WCJ clearly explained his reasons for finding certain testimony and reports to be credible and convincing while explaining his reasons for rejecting other competent evidence. Our appellate review has not been impeded, and we are not in need of further elucidation or clarification to reach our decision.

At its core, Claimant's argument appears to be a challenge to the WCJ's *rationale* in rejecting certain testimony and evidence. The WCJ is the fact finder,

21

and it is solely for the WCJ to assess credibility and resolve conflicts in the evidence. *Hawbaker v. Workers' Compensation Appeal Board (Kriner's Quality Roofing Services)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017). It is well settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). Because we are bound by the WCJ's credibility determinations on appeal, *see Hutz v. Workers' Compensation Appeal Board (City of Philadelphia)*, 147 A.3d 35, 54 (Pa. Cmwlth. 2016), we conclude that this argument is also without merit.

### *Penalty Petition*

In a penalty petition, the claimant bears the burden of establishing a violation of the Act. *See Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission),* 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000) ("[O]nce a claimant files a penalty petition, the onus is on him or her to establish a violation of the Act or its rules or regulations.") A WCJ considering a claim for penalties has the sole discretion in deciding whether to award penalties for a violation of the Act. *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221, 228 (Pa. Cmwlth. 2008).

Here, Claimant's penalty petition asserted that Employer failed to pay specific medical bills related to reasonable and necessary medical treatment. In Findings of Fact Nos. 17 through 23, the WCJ determined that while Employer had paid some of the disputed bills, others were not paid because they were unsupported by documentation showing that the treatment was related to Claimant's work injury; thus, the WCJ concluded that Claimant failed to sustain his burden.

22

On appeal, Claimant does not appear to challenge these findings; rather, he argues that the WCJ "misapprehended" the purpose of the bills that were submitted as exhibits. Claimant's Brief at 36. Claimant notes that after the penalty petition was filed, he sought a stipulation with Employer that the medical bills at issue had been received by Employer and remained unpaid. When Employer did not agree to the stipulation, Claimant sought a subpoena from the WCJ pursuant to Section 436 of the Act, 77 P.S. § 992.[12] The purpose of the subpoena was to depose Employer's insurance claim representative in order to establish that Employer received the bills at issue and "what actions were taken over what period of time." Claimant's Brief at 37.

Claimant asserts that despite being served with the subpoena, Employer "failed (or refused) to produce the claims representative, who is also in the exclusive care and control of [Employer]." Claimant's Brief at 37. As a result of the "refusal," Claimant requested that the WCJ draw an adverse inference against Employer that the bills were received by Employer and were either not paid at all, or were paid but not within 30 days of Employer's receipt of them. *See* Claimant's Request for Adverse Inference, R.R. at 438a.

The WCJ did not address the request for adverse inference. Claimant argues that the WCJ's failure to address the issue amounts to a capricious disregard of evidence and asks that this matter be remanded for the presentation of the claims representative. In the event the claims representative is not produced, Claimant asks that the adverse inference be drawn.[13]

---

[12] Section 436 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

[13] Employer does not directly respond to this portion of Claimant's argument. Instead, Employer asserts that the WCJ properly concluded that Claimant failed to sustain his burden of **(Footnote continued on next page…)**

Based on our review of the record, we do not believe that a remand is necessary. Section 436 of the Act addresses subpoena practice in workers' compensation proceedings and states:

> The [S]ecretary, any [WCJ] and any member of the [B]oard shall have the power to issue subpoenas to require the attendance of witnesses and/or the production of books, documents, and papers pertinent to any hearing. Any witness who refuses to obey such summons or subpoenas, or who refuses to be sworn or affirmed to testify, or who is guilty of any contempt after notice to appear, may be punished as for contempt of court, and, for this purpose, an application may be made to any court of common pleas within whose territorial jurisdiction the offense was committed, for which purpose such court is hereby given jurisdiction.

In *Stover v. Workmen's Compensation Appeal Board (SCI Graterford)*, 671 A.2d 1217 (Pa. Cmwlth. 1996), the claimant filed a penalty petition alleging that the employer violated the Act by refusing to pay the claimant's bills for work-related psychiatric treatment. During the proceedings, the WCJ issued a subpoena at the claimant's request, directing the production of certain personnel and medical records. Although the employer produced documents, the claimant maintained that the employer had not fully complied with the subpoena. As a result, the claimant filed a petition for contempt in the trial court. The trial court then issued a rule to show cause and stayed the workers' compensation proceedings pending disposition of the rule. *Id.* at 1219.

Although the underlying issue in *Stover* was whether the trial court had jurisdiction to stay the workers' compensation proceedings pending disposition of

---

proving that Employer wrongfully denied payment of medical treatment and reimbursement for out-of-pocket expenses.

the rule to show cause,[14] we cite the case here because this Court acknowledged that "[t]he Act provides the exclusive remedy for punishing an individual for failure to obey a subpoena issued by a WCJ . . . ." *Id.* at 1220.

In this case, the record does not reflect that Claimant took any steps to have Employer comply with the subpoena; rather, Claimant skipped the procedures set forth in Section 436 of the Act and sought to have the WCJ draw an adverse inference. Under the facts presented here, where Claimant did not diligently seek compliance with the subpoena, we believe the WCJ's failure to address the request for adverse inference was a harmless error.

## Conclusion

Because we conclude that there were no deficiencies in the UR process, that Employer presented competent evidence, that the WCJ issued a reasoned decision, and that Claimant's penalty petition was properly denied, the Board's July 20, 2023, order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[14] We held that it did not. *Stover*, 671 A.2d at 1220-21.

25

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Perry, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 850 C.D. 2023 |
| | : | |
| Mid Atlantic Hose Center, LLC | : | |
| (Workers' Compensation | : | |
| Appeal Board), | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 17th day of September, 2024, the July 20, 2023 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge